# GEORGE KRAMER v. R. C. WINSLOW.

## APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF JEFFERSON COUNTY.

Argued October 8, 1889—Decided January 6, 1890.
[To be reported.]

1. If an agent with written authority to sell land for a specified price, contracts for its sale at a greater price, and, concealing this fact from his principal, obtains a conveyance of the latter's title for the originally specified price, after which he consummates the sale previously contracted for, such agent is bound to account to the principal for the difference between the amount paid by him for the title and the proceeds of the sale by him made.

2. In an action by the principal to recover this difference, no question as to a merger of the original writing, authorizing a sale, in the subsequent conveyance to the agent, or as to altering, contradicting or setting aside the instrument transferring to the agent the title of the principal, can arise, unless the agent shows clearly that before purchasing the title from the principal he gave the latter full information respecting the contract of sale which he had already made.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 51 October Term 1889, Sup. Ct.; court below, No. 96 February Term 1886, C. P.

On January 7, 1886, George Kramer brought assumpsit against R. C. Winslow, to recover a balance alleged to be in the hands of the defendant as the agent of the plaintiff for the sale of certain lands. The defendant's pleas were non-assumpsit, the statute of limitations, payment with leave and set-off.

At the trial on May 26, 1887, the following facts were shown:
In the year 1879, the plaintiff, the defendant, John Hastings

and M. J. Dinsmore were tenants in common of a certain tract of land, containing 1,112 acres, in McCalmont township, Jefferson county, each owning the undivided one fourth thereof. The owners desired to sell it. The plaintiff's interest in it was largely encumbered with judgments. In December of that year the plaintiff gave to the defendant a writing of which the following is a copy:

"I hereby authorize R. C. Winslow to sell my undivided one fourth interest in the eleven hundred and twelve acre tract of land in McCalmont township, Jefferson county, for the consideration of seven thousand five hundred dollars, one third as soon as the deed can be made, and balance in two equal annual payments, with interest. And for the purpose of making a good title, I authorize him to issue an execution on the judgment of J. G. Calwell against me and sell my interest at sheriff's sale, for the purpose of removing all encumbrances against said land, and to purchase the same at said sheriff's sale, or have some one do the same, so as to control the title; not, however, at a price exceeding about three thousand dollars. And when the sale is made, and the deed made to purchasers, and the deferred purchase money secured to be paid, to assign me, George Kramer, so much of said purchase money as will make the balance of seven thousand five hundred dollars. And in case said Winslow fails to complete said negotiations for the sale of said land before the February court, 1880, to stay the execution so issued and annul this contract."

(Signed in German,) " GEORGE KRAMER."

At the time this writing was executed the defendant told the plaintiff that there was a prospect of selling the land; that it should not be sold for a smaller sum than would net the owners thirty thousand dollars, and, outside of his proportion of the taxes that had accumulated upon it, the plaintiff should be at no expense connected with the sale, but should receive the one fourth of $30,000 less one fourth of the taxes. The plaintiff then expressed himself as satisfied and signed the paper.

Between the date at which this writing was signed and January 24, 1880, the defendant made a contract with the Sandy Lick Gas Coal & Coke Co., for the sale of the entire land to it for the consideration of $44,497.50.

On January 24, 1880, the defendant met the plaintiff in the Mahoning Bank, when he told the plaintiff that he was negotiating a sale of the land with eastern parties, but did not inform him that a contract had already been made with the Sandy Lick Gas Coal & Coke Co. The plaintiff made no inquiry with whom the negotiations mentioned by the defendant were being made and how far they had progressed, and the defendant did not inform him. At this interview the following instrument was drawn up and signed by the parties:

" Whereas, R. C. Winslow is negotiating with eastern parties for the sale of the 1,112 acre tract of land in McCalmont township, known as the Winslow & Hastings land, in which I have an undivided one fourth interest largely encumbered with judgments; therefore, I hereby agree with the said R. C. Winslow as follows: For the purpose of enabling him to make a good title for said land I authorize him to sell my interest in the same at sheriff's sale and to purchase the same in his own name at a sum not exceeding say three thousand dollars. After which I promise to make him a quit-claim deed for any remaining interest that I might have, upon the following terms and consideration: The said R. C. Winslow agrees to pay for the same as soon as the said sale is made and deed received the sum of seven thousand five hundred dollars as follows: One third in hand (providing that amount is not consumed in purchasing the land at sheriff's sale) and balance in two equal annual payments from date of deed, with interest on both the payments for one year, by assignment of so much of the mortgage taken from the purchasers as will pay said George Kramer the balance of the seven thousand five hundred dollars. The said George Kramer to pay his proportion of all taxes due upon said land as soon as sale is made.

" Witness our hands and seals the 24th day of January, A. D. 1880. " GEORGE KRAMER. [Seal.]
" R. C. WINSLOW. [Seal.]

" If sale is not made as aforesaid this agreement to be null and void. " GEORGE KRAMER.
" R. C. WINSLOW."

After the execution of this second agreement, a writ of fieri facias was issued upon the judgment therein mentioned, the præcipe being issued by a law firm of which the defendant was

a member. By virtue of this writ the plaintiff's interest in the land was sold by the sheriff for $3,000 to E. H. Wilson, who became the purchaser under an arrangement between Kramer, Winslow and himself, as the representative of the Mahoning Bank, a lien creditor of Kramer. On the day of the sheriff's sale Wilson paid to Kramer, by agreement, $500, in full of Kramer's interest in the land over and above the liens against it. At this time Kramer was not aware of the terms of the contract made by Winslow with the Sandy Lick company.

The sheriff's deed to Wilson was acknowledged February 11, 1880. After receiving it, Wilson conveyed to Winslow the interest purchased by the former at the sheriff's sale. Having purchased the interest of Hastings for $9,000, and the interest of Dinsmore for $7,500, Winslow then by a deed dated February 16, 1880, conveyed the entire title to the Sandy Lick Gas Coal & Coke Company, in consummation of the contract previously made with said company, receiving from it the cash consideration specified in the contract, and a purchase money mortgage for the balance, which was afterwards paid. Winslow paid into the Mahoning Bank, on Kramer's account, the sum of $7,500, together with a proportionate part of the interest collected on the purchase money mortgage. After deducting the $500 which had been advanced to Kramer, the bank applied the money so paid to Kramer's record indebtedness. Winslow never accounted to Kramer for more than $7,500 of the consideration received by the former from the Sandy Lick company, and upon Kramer's discovering the terms of the sale made to said company and demanding a further accounting, refused to comply with the demand. The evidence is more fully stated in the charge of the court below.

At the conclusion of the testimony the court, WILSON, P. J., after stating the claim of the plaintiff and reading the paper of December, 1879, and the contract of January 24, 1880, charged the jury as follows:

The plaintiff testified that his signatures to these papers were procured from him upon the representations of the defendant that he was in correspondence with eastern parties and could get $30 per acre for the land and would give him the last bottom dollar on his quarter interest, and that he never sold on

any other terms; that Winslow said the negotiations must be kept secret, otherwise other parties would spoil the sale, and Kramer·was to have one fourth of what the land sold for, and the proceeds were to be applied on his debt to the bank. No price was fixed at which the land was to be sold. Mr. Winslow agreed to pay a Mr. Garrett his charges for prior negotiations in endeavoring to sell the property, and was to charge Mr. Kramer nothing for making the sale. Mr. Kramer further testified he would not have signed the paper if the agreement had been otherwise than he alleges, and that the paper was not read over to him; that Mr. Winslow was his attorney; he had confidence in him; gave him authority to do what he pleased, and he had never been told the price Winslow received.

[John Hastings had an agreement in writing with Mr. Winslow to sell his undivided one fourth in the same land for $9,000, and he received that amount. Mr. Dinsmore had a contract with Mr. Winslow to sell his quarter interest in the same tract for $7,500, and that sum was paid to him.] [12] Mr. Kramer alleges that Winslow had sold the land before the second agreement was signed.

The defendant's testimony was substantially: That the contract in writing of January 24, 1880, was read to the plaintiff just as it was written, and was signed by him unhesitatingly, in the bank, after business hours, when all the owners of the land were present; the writing embodied everything agreed on, and there was no agreement outside of the written contract. Mr. Winslow paid out for expenses in conducting the sale, outside of his own time for several years in trying to dispose of the land, between seven and eight thousand dollars. Neither he nor his law partner was acting as counsel for Kramer; that the relation of attorney and client at one time existed between them, but terminated in the year 1871, and was never resumed, except in a single transaction wherein the Mahoning Bank was interested, and during the period covered by the negotiations and sale of the land there was no confidential or professional relation between them, nor anything to raise such relation; neither was Winslow acting as agent for Kramer; that legally and morally Kramer received everything he was entitled to. Afterwards Kramer requested Winslow to pay him various sums, from $3,000 down to $500, all of which were refused,

with declarations of Winslow that he did not owe Kramer anything. The defendant further testified that he sold the land for himself; that he bought Kramer's one fourth interest absolutely under the contract of January 24, 1880, and he paid the sum of $7,500, which was in full of Kramer's interest in the purchase money, to the Mahoning Bank, for Kramer's use, on his indebtedness to the bank, and for that amount the plaintiff received credit from the bank. Secrecy was not observed or enjoined, except so far as it was necessary to prevent interference with the sale. The sum of $500 was deducted from the consideration for shortage of the land. The jury will recall any facts in evidence on either side omitted in this statement of the facts.

The plaintiff's counsel requests the court to instruct the jury:

1. That the writing of January 24, 1880, between the plaintiff, George Kramer, and the defendant, R. C. Winslow, constituted R. C. Winslow the agent of George Kramer for the sale of plaintiff's undivided interest in the McCalmont township lands.

Answer: Refused, with the explanation that the facts recited in this point clearly establish the relation of buyer and seller.[1]

2. That as agent and joint owner, R. C. Winslow, the defendant, was bound both by law and good faith to disclose fully all the transactions had by R. C. Winslow, as such agent and joint owner, relating to the sale of plaintiff's interest, and it would be a fraud not to do so.

Answer: Refused, if as we understand this point, it refers to the contract of January 24, 1880. Standing alone it does not create either agency or trusteeship, but the contractual relation of vendor and vendee.[2]

3. That the title to George Kramer's interest in the 1,112 acres of land in McCalmont township having vested in R. C. Winslow, the defendant, by virtue of the sheriff's sale of his, Kramer's, interest to E. H. Wilson, and by E. H. Wilson conveyed to R. C. Winslow, the defendant, under an agreement between E. H. Wilson, George Kramer, the plaintiff, and R. C. Winslow, the defendant, that would constitute R. C. Winslow a trustee for George Kramer, the plaintiff, as to the interest so acquired.

Answer: Refused. The facts mentioned in this point refer to a judicial sale, which, under the undisputed evidence, was necessary to perfect title in Kramer so as to make the title marketable, under the first agreement or option from plaintiff to defendant.[3]

4. That where there is a special confidence or relationship which affords the power and means to one to take advantage or exercise undue influence over the other, a transaction between parties so situated is watched with extreme jealousy and solicitude; and if there be found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party.

Answer: Affirmed.

5. That if the jury find from the evidence that R. C. Winslow, the defendant, represented to George Kramer, the plaintiff, that he was selling the joint lands for $30,000, and obtained the writing of January 24, 1880, authorizing the sale of Kramer's interest for $7,500 and before the date of said writing of January 24, 1880, he, R. C. Winslow, had made a sale of said lands by article of agreement, for $44,497.50, without informing Kramer, the plaintiff, of the sale, he, Winslow, would be liable in this action for the difference between what he paid on account of Kramer's interest and the sum he, Winslow, received for the same, and the verdict of the jury should be for that difference with interest from the date of payment.

Answer: Affirmed; if the jury believe from a preponderance of all the evidence that the contract of January 24, 1880, was changed to conform to what is alleged by the plaintiff in this point.[4]

6. That if the jury find from the evidence that at the time the writing of January 24, 1880, was signed by both plaintiff and defendant, R. C. Winslow, the defendant, represented to Kramer, the plaintiff, that he, Winslow, was selling the joint lands for $30,000, and at the same time told Kramer to keep the sale quiet, he, Winslow, alleging he was afraid if it was told, P. W. Jenks or some one might interfere and prevent the sale, but in fact to keep Kramer from making inquiry to ascertain the price for which he, Winslow, had sold the land, and that Kramer was under those circumstances and representations induced to sign the writing of January 24, 1880, relying

Charge of Court below.

on the statements of Winslow in relation thereto, and he, Kramer, acted thereby, that would be a fraud on the part of R. C. Winslow, the defendant, and plaintiff would be entitled to a verdict for the difference between the sum paid and that received by Winslow, with interest.

Answer: Affirmed.

7. That it appearing by the writing of January 24, 1880, that R. C. Winslow was negotiating with eastern parties for the sale of the joint lands, being 1,112 acres in McCalmont township, R. C. Winslow at that time having made an agreement for the sale of said lands, which fact, he, Winslow, did not disclose to Kramer, he, Winslow, by reason of the relationship as tenants in common, could not by said writing of January 24th become the purchaser of Kramer's interest for a less sum than he, Winslow, was by his agreement with the Sandy Lick Gas Coal & Coke Company receiving for said interest, and would be liable for the difference between the sum paid and so received, and the verdict of the jury should be for the plaintiff for such difference, with interest from the date of payment to defendant.

Answer: That point is refused, because under the answers to the previous points it appears that this contract of January 24, 1880, was an absolute sale of the interest.[5]

The defendant requests the court to instruct the jury:

1. That fraud is a serious accusation and is not to be lightly inferred, and it is not enough to charge it and prove in support thereof slight circumstances of suspicion only. To be of any avail it must be clearly proved.

Answer: Affirmed.[6]

2. That the mere breach of a verbal agreement made at the time of signing a written contract, whereby one party promises the other to perform certain stipulations not provided for in the writing, does not constitute such fraud as will affect or vary the written contract.

Answer: Affirmed.[7]

3. That under the evidence, the writing, exhibit A., was superseded by or merged in the agreement of January 24, 1880.

Answer: Affirmed.[8]

4. That, as the evidence in this case shows an agreement in writing between the parties for the sale and purchase of the

Charge of Court below.

interest of the plaintiff in the land, the parties are bound thereby in the absence of competent evidence to contradict or vary the writing.

Answer: Affirmed.[9]

5. That, as the evidence on behalf of the plaintiff to contradict or vary the agreement consists of the plaintiff's unsupported oath, which was contradicted by the defendant's oath and the persuasive evidence furnished by the agreement, such evidence on the part of plaintiff is not sufficient to establish such contradiction or variance, and the agreement must be taken as the contract of the parties.

Answer: Affirmed.[10]

6. That the parol evidence in this case is insufficient to contradict or vary the agreement in writing made between the parties, dated January 24, 1880, and offered in evidence on the part of the plaintiff.

Answer: Refused. All the evidence introduced on both sides will be considered by the jury in their determination of the facts referred to in this point.

7. That the evidence in this case falls so short of being direct, clear, precise, and indubitable, that there was fraud, accident, or mistake connected with or in the agreement of January 24, 1880, that the court cannot submit it to the jury.

Answer: Refused.

8. That under the pleadings and evidence in this case the verdict of the jury must be for the defendant.

Answer: Refused.

9. The court is respectfully requested to instruct the jury to disregard the evidence of George Kramer, that he would not have signed the agreement signed by him had it not been for the declaration of Mr. Winslow which said Kramer testified he made.

Answer: Affirmed.[11]

The verdict of the jury was in favor of the defendant. A rule for a new trial having been discharged judgment was entered on the verdict, when the plaintiff took this appeal, assigning for error:

1–5. The answers to plaintiff's points.[1 to 5]

6–11. The answers to defendant's points.[6 to 11]

12. The part of the charge embraced in [ ] [12]

13. That the charge, by giving prominence to the writing of January 24, 1880, misled the jury as to the real question in the case, and the effect of the charge as a whole was erroneous.

*Mr. H. C. Campbell* (with him *Mr. A. C. White*), for the appellant:

1. In the construction of a contract the situation of the parties and of the property which forms the subject matter, and the intention and purpose of the parties in making the contract, are to be considered. This intention is to be carried into effect, so far as the rules of language and the rules of law will permit: 2 Pars. on Cont., 499; 2 Whart. on Cont., § 647. The clear purpose of the contract in the present case, as expressed, was to enable the defendant to make a good title in case of concluding a sale to the eastern parties with whom he alleged he was negotiating, and it was not the intention of either the plaintiff or the defendant to make a sale between themselves. When a contract admits of more senses than one, the promise is to be taken in the sense which the promisor apprehended at the time the promisee received it: Williamson v. McClure, 37 Pa. 402; Kerr on Fraud and Mistake, 157. By the contract, the defendant assumed the position of an agent for the sale of his co-tenant's interest.

2. As an agent the defendant sustained to the plaintiff a relation of confidence and trust. He was accordingly bound to deal openly and fairly, and any imposition or deceit would be a fraud: Chronister v. Bushey, 7 W. & S. 152; Rankin v. Porter, 7 W. 387; Fisk v. Sarber, 6 W. & S. 19; Fisher's App., 34 Pa. 29; Hart v. Girard Bor., 56 Pa. 23; Parshall's App., 65 Pa. 224; Newbold's App., 80 Pa. 317; 1 Story's Eq. J., §§ 192–194, 203; Bisp. Eq., §§ 93, 237, 238. Moreover, as co-tenants, there was a relation of confidence between the parties: Bisp. Eq., § 93; Keller v. Auble, 58 Pa. 410; Duff v. Wilson, 72 Pa. 442. And the defendant's dealings with the plaintiff were required to be open, ingenuous and disinterested: Bartholemew v. Leech, 7 W. 472. If the contract of January 24, 1880, was a purchase, the defendant's concealment of the sale he had already made, and his misrepresentations to the plaintiff, rendered the transaction a fraud: Edmunds's

App., 68 Pa. 31; Fisher v. Worrall, 5 W. & S..478; Phipps v. Buckman, 30 Pa. 401; Clark v. Everhart, 63 Pa. 347; Mc-Grann v. Railroad Co., 111 Pa. 171; Kerr on Fraud and Mistake, 73, 74.

3. The court tried the case upon an erroneous theory. No evidence was offered to contradict or vary the writing of January 24, 1880. That writing was not used for the purpose of recovering upon it. On the contrary, it was a mere instrument of evidence to prove a collateral fact, and should have been submitted to the jury along with the other evidence. An admixture of parol and written evidence carries the whole to the jury: McCullough v. Wainright, 14 Pa. 171; Reynolds v. Richards, 14 Pa. 205; McKean v. Wagenblast, 2 Gr. 462. The theory of our case was, that the defendant, having been constituted the confidential agent of the plaintiff, abused the confidence reposed in him. The evidence clearly establishes the breach of confidence: Lingenfelter v. Ritchey, 58 Pa. 485; and, having by this means procured the title, the defendant, who has accounted for but $7,500 of the proceeds of the plaintiff's interest in the land sold, is now liable to account for the remainder thereof. The evidence referred to in the defendant's ninth point was offered to show the plaintiff's belief in the representations made to him, which was a material fact: McGrann v. Railroad Co., 111 Pa. 171.

*Mr. Charles Corbet* (with him *Mr. John E. Calderwood*), for the appellee:

1. By the rules of both construction and evidence the writings signed by the plaintiff are to be taken most strongly against him. It is not competent for him to insist upon the effect of one portion of the papers constituting his own evidence, without giving the defendant the benefit of the other portion of them: Greenleaf v. Birth, 5 Pet. 132. It was not the meaning secretly intended by the plaintiff, but that expressed by the words used, that the court was to ascertain: 1 Greenl. Ev. § 277; Juniata Building Ass'n v. Hetzel, 103 Pa. 507. Under the rule respecting the evidence requisite to reform a written instrument, laid down in Sylvius v. Kosek, 117 Pa. 67, the court ought to have taken the case from the jury in favor of the defendant, and the submission of the question of fraud to the jury was more than the plaintiff was entitled to.

2. The whole effort of the plaintiff was to show that the contract of January 24, 1880, was something different from what on its face it purported to be. The court could not have charged that it constituted the defendant an agent. It is plainly on its face a sale for $7,500. The fact that the parties were co-tenants was not of itself an obstacle to the defendant's purchasing: Fisher's App., 34 Pa. 29; and whether there was any unfairness or fraud practiced by the defendant was fairly submitted to the jury. To have affirmed the points of the plaintiff on this subject, would have been to assert that one co-tenant can never purchase from another with hope of profit in the transaction.

3. A number of the points presented by the plaintiff, and refused or qualified by the court, contained assumptions of fact which necessarily prevented their affirmance. Even if some of the instructions were not entirely accurate, the judgment ought not to be reversed. If upon any ground there was a perfect defence, it matters not what instructions may have been given respecting other parts of the case. It would be idle to reverse and award a new trial, if it be certain that the plaintiff cannot recover in such trial: Brobst v. Brock, 77 U. S. 519; Malson v. Fry, 1 W. 433; Hoffer v. Wightman, 5 W. 205; Chambers v. Bedell, 2 W. & S. 225; Chase v. Hubbard, 99 Pa. 226.

OPINION, MR. JUSTICE GREEN:

It was entirely undisputed that Kramer and Winslow, with two others, were tenants in common of the land in question, each having a one fourth interest. It was established by the testimony of the defendant himself that prior to the execution of the paper of January 24, 1880, he had been negotiating with eastern parties for the sale of the land, and had actually made a contract with the Sandy Lick Gas Coal & Coke Company, or its representatives, for the sale of the property for a consideration named therein, which was known to him; that at the time he obtained the paper of January 24, 1880, he did not tell Kramer what he was to get for the land, and that he never told him, or gave him any information on the subject, but that he did say to Kramer the land would not be sold for less than $30,000. In actual fact, Winslow had contracted to sell the land before January 24, 1880, to the coal and gas company for

$44,497.50. But before he made that contract he had accepted from the plaintiff an agreement authorizing him, Winslow, to sell the plaintiff's interest, being the undivided one fourth interest in the land, for the consideration of $7,500, with authority, also, to have execution issued against Kramer on a certain judgment, and the interest of Kramer sold by the sheriff, so as to perfect the title. There was an added provision that if Winslow failed to make the sale before February court, 1880, the execution was to be stayed. This agreement was made in December, 1879. The precise date does not appear, but it was testified to be about the middle of December. After this, and before January 24, 1880, Winslow made the contract for the sale of the whole tract for $44,497.50, and after that he obtained from the plaintiff the paper of January 24, 1880. There is no occasion to go any further with the statement of facts than this.

That the agency of the defendant for the plaintiff in making the sale was perfectly established by the paper of December, 1879, is not open to a moment's question. That the sale was made by the agent while that agreement was in force, is proved by the defendant's own personal testimony. That he withheld from the plaintiff all knowledge, both of the fact of the sale and the amount of the consideration, is actually narrated by the defendant as a witness on the stand, and apparently as if he thought such conduct lawful and honest. Having this knowledge, he induced the plaintiff to execute the agreement of January 24, 1880. In that agreement, after reciting what was false, to wit, that he was still negotiating with eastern parties for the sale of the land, when, by his own testimony, it is proved that the negotiation had already been closed; and suppressing what was true, to wit, the fact that he had already sold the land for nearly $45,000, he induces the plaintiff to agree that he, the defendant, may have the plaintiff's interest in the land sold at sheriff's sale, and may buy it himself at a sum not exceeding $3,000, and, after the sheriff's sale, that he, the plaintiff, will execute a quit-claim deed to the defendant for $7,500, the whole of which was to be paid out of the proceeds of the sale to the eastern purchasers. As if to add to the iniquity of the transaction, a clause is inserted in the agreement, at the end, but above the signatures, in these words:

" If sale is not made as aforesaid, this agreement to be null and void." The effect of this was that Winslow was not to be bound in any event by anything but an actual, closed, completed sale to others; and therefore the instrument of January 24, 1880, could not possibly be regarded as an absolute deed, sealed and delivered, passing the title by its own force; but Kramer was bound to convey by quit-claim to Winslow, if he required it, for $7,500, his, Kramer's, title, which he, Winslow, Kramer's own agent to make the sale, and also his cotenant, had already contracted to sell to others for over $11,000.

Lest we may be considered as having misunderstood or overstated the evidence, we quote from the testimony of Winslow as follows : " Q. At the time that you obtained this second contract, you had made your preliminary contract for the sale of the land ? A. I stated that before. Q. And you knew what you were getting for it? A. I knew what I was getting for it; yes, sir. Q. You did not tell George Kramer what you were selling that land for, when you got that second writing, did you ? A. I did not, sir; never told him. Q. You never gave him any information as to what it was being sold for? A. I never did, sir." There was more testimony of the same sort, from the same witness, but this is enough. The sale by the sheriff was had under a writ of execution issued by a law firm, of which Winslow was a member. Kramer's interest was sold to one Wilson by arrangement with Winslow, whereupon Wilson conveyed the interest to Winslow, who then conveyed to the real purchasers; and the proceedings were carried on with so much expedition that although the second agreement between Kramer and Winslow was made on January 24, 1880, the final deed from Winslow to the Sandy Lick Gas Coal & Coke Company was executed on February 16, 1880, just 23 days later. On the same day, the purchaser gave a mortgage to Winslow for $29,665, part of the $44,497.50 purchase money of the whole tract.

In the court below the case was totally misconceived and mistried. It was disposed of on the theory that the agreement for the agency to make the sale was merged in the paper of January 24, 1880, which the court held to be an absolute deed in fee-simple, and that the question was whether this deed could be changed by parol. The learned court utterly failed to sub-

mit even that question to the jury, or, in fact, any question. In the charge, the court told the jury what the plaintiff's testimony was, and what the defendant's testimony was, and then, without telling them what question arose, or that any question arose, for their decision, answered the points on both sides; and these answers, so far from presenting any distinct question of fact to the jury for their decision practically took away from them the consideration of any question whatever.

Thus, the court affirmed the defendant's third point, which was: "That, under the evidence, the writing exhibit A was superseded by or merged into the agreement of January 24, 1880." This disposed of the original agreement of December, 1879, creating Winslow's agency to make the sale for Kramer. Next, the defendant's fourth point was affirmed, which was: "That, as the evidence in this case shows an agreement in writing between the parties for the sale and purchase of the interest of the plaintiff in the land, the parties are bound thereby, in the absence of competent evidence to contradict or vary the writing." This may mean that the parties are bound by the contract because there was an absence of competent evidence to contradict, or it may mean that they would be bound *if* there was an absence of competent evidence to contradict; and this very uncertainty was a conclusive reason why the point should have been either refused or qualified. But, to remove all doubt, the defendant's fifth point was also affirmed, which was: "That as the evidence on behalf of the plaintiff to contradict or vary the agreement consists of the plaintiff's unsupported oath, which was contradicted by the defendant's oath and the persuasive evidence furnished by the agreement, such evidence on the part of the plaintiff is not sufficient to establish such contradiction or variance, and the agreement must be taken as the contract of the parties." This was a binding instruction to the jury that all the plaintiff's testimony was insufficient to vary the deed or agreement of January 24, 1880, and consistency required that the jury should have been directed to find a verdict for the defendant, but the court refused to do this, by refusing the defendant's sixth, seventh, and eighth points. Nevertheless, the court did not explain anywhere, either in the charge or answers, that there was any question of any kind for them to dispose of.

But what makes the whole matter so very much worse even than this, is, that the court refused the plaintiff's seventh point, which did ask to commit to the jury the whole effect of the defendant's acts and omissions upon his liability to account, for the reason that " this contract of January 24, 1880, was an absolute sale of the interest; " and yet they affirmed the plaintiff's fifth point, which presented substantially the same facts as the seventh, " if the jury believe, from a preponderance of all the evidence, that the contract of January 24, 1880, was changed to conform to what is alleged by the plaintiff in this point." At the same time the court affirmed, without qualification, the plaintiff's sixth point, which simply asked to commit to the jury the whole of the facts set up by the plaintiff as evidence of fraud by the defendant which would justify a verdict against the defendant for the amount of the difference between the sum received by him and the sum paid to the plaintiff. In other words, the jury might find for the plaintiff, under the answer to the plaintiff's fifth and sixth points, if they found that the contract of January 24, 1880, was changed by parol, in accordance with the plaintiff's allegations, but, under the answer to the plaintiff's seventh point, they could not so find, because the contract of January 24, 1880, was an absolute sale of the plaintiff's interest. And, under the answer to the defendant's fifth point, they were absolutely directed that all the plaintiff's testimony, taken together, was insufficient to change that contract. Nevertheless, when asked by the defendant to charge that the evidence was insufficient to change the contract, such instruction was refused, and the jury were told that all the evidence was for them. What the jury were to do under such a state of the charge and answers is simply impossible for us to understand, and, that being so, we are bound to hold that the charge and answers were confused, uncertain and misleading.

The whole difficulty grew out of the misapprehension by the learned court of the true character of the case, and of the question involved. There was no question of merger of the original agreement or letter of attorney, authorizing Winslow to sell the plaintiff's interest in the land, into the contract of January 24, 1880. There was no question of altering, contradicting or changing the contract of January 24, 1880, nor of setting it

aside as void for fraud. That paper had done its work completely, and other rights had intervened. Under it the plaintiff's interest in the land was sold at sheriff's sale to Wilson, who conveyed at once to Winslow, who in turn conveyed to the Sandy Lick Gas Coal & Coke Company, for a full and valuable consideration, the whole of the tract, including the plaintiff's interest. These purchasers were innocent purchasers for valuable consideration actually paid, and without notice of any fraud. Of course, their title cannot be affected, and there is not, and cannot be, any question in the case of setting aside, changing, or altering the contract of January 24, 1880. It cannot be done, and was not asked to be done by the plaintiff, and he repeatedly called the attention of the court below in his points to what was the real question in the case, to wit: How much was the defendant bound to account for to the plaintiff by reason of the facts that he had undertaken to sell, and had sold, the plaintiff's interest in the land, and had not accounted to the plaintiff for the whole amount received? Did the defendant accept the agency for the sale? Did he sell the interest while the agency continued? How much did he sell the interest for? How much did he pay to the plaintiff? For the difference, if there was any, he was liable to account to the plaintiff in this action. It was an action of assumpsit to recover that very difference, and for nothing else. The plaintiff's case was made out by the defendant's personal testimony. He did accept the agency to sell; he did sell. After that, and without informing his principal either that he had sold, or of the amount at which he sold, he obtained from him the contract of January 24, 1880, which has, in a contorted form only, but not in substance, the effect of an absolute conveyance. But when that paper was obtained, and if it had been of the most absolute character as a conveyance, it would not have reduced by a hair's breadth the terms or the extent of Winslow's liability to Kramer in this action. No question of that kind could have arisen unless Winslow had proven very clearly indeed that before obtaining that paper he had informed Kramer very fully, and with perfect truthfulness, of the fact that he had contracted for the sale, of the parties to whom he had sold, and of the precise amount for which he had sold. If, after that, Kramer had chosen to make the contract of January 24, 1880, he would be

bound by it; but, without such knowledge on his part, that paper would be no more than a puff of air in the way of his recovery.

The defendant's own testimony established his own liability beyond all question, and the jury should have been so instructed. Whether he was entitled to any abatement of the full amount of the difference between the sum he paid Kramer and the amount received, would depend upon the character of the allowances claimed, and also upon the question whether he was guilty of fraud in fact. If he was, he would be entitled to no deductions; but we express no opinion upon these matters, because they are not before us. We sustain the second, fourth, fifth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth assignments of error, and on them the judgment is reversed.

Judgment reversed, and new venire awarded.