## CLARK v. BIRD.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

1. AGENCY—GOOD FAITH OF AGENT—SALE OF REAL ESTATE—AGENT AS PURCHASER—CONFLICTING EVIDENCE—SUFFICIENCY.

In an action by the grantor of real estate to set aside the sale on the ground that the agent employed by her to secure a purchaser in fact purchased the property, while she thought the sale was being made to another, it appeared that the agent had induced her to sign a contract of purchase with such other party; the agent agreeing to execute with the other a bond accompanying a mortgage, which was to be given to the grantor. Subsequently a deed was given, running to the agent. The bond was signed by the agent and the other, and a mortgage signed by the agent alone was kept by him for the purpose of record. The grantor testified that she did not know that the conveyance was being made to the agent, but the agent and his clerk testified that plaintiff did know that the title was taken in the agent. The consideration for the sale was $1,600, and the evidence showed the property to be worth about $3,000. The agent was a shrewd business man, and the grantor a woman advanced in years, physically weak, and of inferior mental capacity, and no business ability. *Held,* that plaintiff did not know that the conveyance was being made to her agent, and the transaction would be set aside.

2. MORTGAGES—ACCEPTANCE OF INTEREST BY MORTGAGEE—FRAUD—RATIFICATION OF TRANSACTION.

Where, after the grantor learned that the deed ran to the agent, she informed him. on the payment of interest on the purchase-money mortgage given by him, that she would put the money in the bank until she got her property back, and stated that she was going to consult a lawyer, the acceptance of the money did not constitute a ratification of the transaction.

Appeal from trial term, Monroe county.

Suit by Sarah Clark against Charles Bird. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

The plaintiff acquired title to the premises in controversy, which consisted of a city lot on the east side of Williams street, in the city of Rochester, on the 30th day of December, 1899, at a foreclosure sale. The defendant is a real estate agent in said city, of considerable experience, and had been intrusted by the plaintiff with the collection of rents from other property owned by her. When she became vested with these premises she employed the defendant to collect the rents, as there were dwellings on the place, and at the same time she authorized him to effect a sale thereof. The plaintiff herself made one or two offers for the property, but was very properly advised by the defendant against making the sale. In the latter part of February, 1900, the defendant informed her that one Coomber would purchase the property for $1,600; and, according to the plaintiff's version, the defendant urged her to accept this offer, representing that the board of health would require the removal of the closets in the buildings, and the substitution of others; that the taxes would largely absorb the revenues; and that she need expect nothing from the property before June. She finally consented to make the sale, and entered into a written contract with Coomber, dated February 23d, whereby she agreed to sell the premises for $1,600, $600 of which were to be paid in cash, and the balance secured by a mortgage on the premises, accompanied by a bond, and to be due in one year, with interest. One hundred dollars were paid in cash upon the execution of the agreement. The deed, which was executed February 26th, was taken in the name of the defendant, instead of Coomber; and a mortgage was executed by the defendant, and retained by him, to be placed on record. The claim of the plaintiff is that she was cheated on this sale, and that she did not know

72 N.Y.S.—49

she was selling the property to her agent, but supposed that Coomber was the grantee; that later on she learned that the defendant was the purchaser, and she endeavored to prevail upon him to reconvey the premises, which he declined to do. One witness as to the value of the property testified it was worth $2,400, exclusive of the buildings; and the only other witness placed the value at $1,500 or $1,600, without the buildings, and said that they were worth about the same sum. The defendant produced no proof as to the value of the property. On the 13th day of April, 1900, the defendant paid the mortgage in full, although not yet due. The defendant, Coomber, and Hadley, who was a clerk of the defendant, testified that the plaintiff knew that the title was taken in the defendant, and that she was apprised Coomber did not desire to complete the contract with her, and that the defendant thereupon became the purchaser, with her full knowledge and assent. Other facts appear in the opinion.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

W. A. Sutherland, for appellant.

Frank J. Hone, for respondent.

SPRING, J. The trial justice found as a fact "that plaintiff did not know at the time that she was executing her deed of said premises that she was making a sale and conveyance of said premises to the defendant, but supposed that the sale and conveyance was being made to Coomber, to whom she had contracted the premises for sale." He has found "that the defendant is a shrewd and able business man, engaged in the real estate business, and familiar with real estate values, and that the plaintiff is a woman of limited intelligence, advanced in years, physically weak, and of inferior mental capacity, and without business ability and experience." In numbers the witnesses predominate decidedly in favor of the defendant on the question of fact as to whether plaintiff knew her agent was purchasing this lot from her. Evidently the court was controlled largely in the conclusion reached against the defendant by the character of the transaction itself. Confessedly, the defendant was employed by the plaintiff to effect a sale of these identical premises. He was familiar with the worth of real estate of this kind, and a shrewd and capable man, while she was of low intelligence and relied upon him. Any transaction between parties thus unequally matched, and especially where a confidential relation exists, will be dissected closely, if the weaker party has been overreached to the profit of the stronger. Where one undertakes to act as agent for another in the sale of property, the rule is inflexible that he violates his trust by becoming the purchaser from his principal, unless the assent of the latter is established by most convincing proof. This principle is based upon good morals and good sense. As was said by Judge Story in his work on Agency (section 210):

"It may be correctly said, with reference to Christian morals, that no man can faithfully serve two masters whose interests are in conflict. If, then, the seller were permitted, as the agent of another, to become the purchaser, his duty to his principal and his own interest would stand in direct opposition to each other; and thus a temptation, perhaps in many cases too strong for resistance by men of flexible morals, or hackneyed in the common devices of worldly business, would be held out, which would betray them into gross misconduct, and even into crime. It is to interpose a preventive check

against such temptations and seductions that a positive prohibition has been found to be the soundest policy, encouraged by the purest precepts of Christianity."

And again, at section 211:

"Hence it is well settled (to illustrate the general rule) that an agent employed to sell cannot himself become the purchaser, and an agent employed to buy cannot himself be the seller. So an agent employed to purchase cannot purchase for himself."

Dutton v. Willner, 52 N. Y. 312; Conkey v. Bond, 36 N. Y. 427; Ten Eyck v. Craig, 62 N. Y. 406, 419.

In support of the finding of the trial court we start with the transgression of this fundamental principle, and, to warrant a reversal, we must be convinced the transaction was fair and honest, and in face of the contrary conclusion arrived at by the trial justice, who saw all the witnesses. The defendant paid a grossly inadequate sum for the premises. Their value was rated at about $3,000 by competent witnesses. The property was assessed at $3,400, and after his purchase the defendant induced the assessors to reduce the valuation to $2,800. The defendant, although sworn in his own behalf, and qualified to pass upon the value of the property, did not controvert the estimate of the witnesses for the plaintiff. We must assume, therefore, that in this deal the defendant obtained from his principal, a woman "advanced in years, physically weak, and of inferior mental capacity," property worth $3,000 for $1,600. This circumstance very naturally would be given significance by the trial justice in determining that the plaintiff did not fully appreciate that she was parting with the title to her agent. Again, Coomber was the party with whom the contract was made; and, when the title was easily shifted to the defendant, Coomber still showed his interest, or at least his goodfellowship with the defendant, by becoming his guarantor for the mortgage debt to the plaintiff. Hadley, the other supporting witness, was a clerk of the defendant. If the trial justice was imbued with the conviction that this trio were engaged in a scheme to wrong the weak old lady, the bolstering of the defendant's testimony by that of his colleagues in the fraud would be given but little credence. To accentuate still more the shrewdness of the transaction, the defendant assumed to act in the role of agent to the extent of charging commissions for investing himself with the ownership of the property. The papers themselves, in connection with certain undisputed facts, in a measure give intrinsic support to the conclusion of the trial justice on the contention we are considering. The original contract was between the plaintiff and Coomber, and the defendant agreed to execute the bond with him. The bond was executed by these two, but the mortgage, of course, was signed by the defendant alone, and kept by him for recording. The plaintiff then took away the bond signed by the two, which fact, in view of the understanding that both were to sign it, gives credit to her statement that she supposed Coomber was the vendee. All of these facts tend in some degree to corroborate the narrative of the plaintiff, and, while she is contradicted by the defendant and Coomber and Hadley, in view of these sustaining circumstances we are not disposed to disagree with

the finding of the trial justice that the plaintiff believed she was selling her property to Coomber.

It is urged ably and strenuously by the appellant's counsel that the acceptance of pay on the mortgage by the plaintiff after she had learned that the deed ran to the defendant was a ratification of that act, and estopped her from assailing the transaction. It is elementary that the occurrence described by the plaintiff was voidable at her election, and if, with full knowledge of all the facts, she "deliberately and freely" ratified the act of her agent, she thereby waived her right to repudiate it. Story, Ag. § 210; Johnstone v. O'Connor, 21 App. Div. 77, 83, 47 N. Y. Supp. 425. Ratification between the original parties, however, "implies a conscious and intended approval of the act done. It rests in the intention." Glenn v. Garth, 133 N. Y. 18–35, 30 N. E. 349, 31 N. E. 344; Merritt v. Bissell, 155 N. Y. 396, 50 N. E. 280. That intention is generally one of fact, to be deduced from all the circumstances. Parker v. Baxter, 86 N. Y. 586, 593; Osborn v. Gantz, 60 N. Y. 540, 542. Plaintiff, according to her story, learned that the title had been taken by the defendant, instead of by Coomber, March 23d; and she immediately began to disavow the transaction, and besiege the defendant to reconvey to her, which he declined to do. The plaintiff testified that when the money was paid on the mortgage, on April 17th, "I told Bird that I would place the money in the bank until I got my property back; that I would hold the money ready for them until I got my property back." Hadley confirms the plaintiff in this, testifying that she said as she went away with the money: "I am going to keep this now until you give me back the property. * .* * I am going to a lawyer." This does not indicate she was giving "conscious approval" of the transfer to her agent. There was no acquiescence implied in the declaration, but an evident purpose to get back the property. The acceptance of the money on the mortgage, viewed alone, may have been incompatible with an intention to disaffirm; but, when accompanied with the express declaration quoted, it may not, as a fact, show any ratification, and the trial court has so held. Neither defendant nor Hadley gave any dissent to the course the plaintiff proposed to adopt. Apparently the defendant was willing, if he heard the remark of the plaintiff, to acquiesce in her proposition to keep the money intact until the determination of her attempt to obtain a reconveyance of the property. No one had advised her of the effect of the acceptance of this money. In view of her infirmities, physical and mental, and in view of the relation which the defendant had sustained to her, and in view of the fact that her attitude involved an imputation upon his integrity, the suggestion might be made that it would have been proper for him to intimate to her that she could not obtain the fruits of the transaction and still repudiate it. Seemingly, he preferred to have her bound by an act which she did not comprehend. The burden of her complaint constantly was that she had been cheated; that she desired her property back; and she persisted in this statement openly, even when receiving the money; and it is reasonable to conclude that she did not intend to ratify his unauthorized conduct by receiving the money on the mortgage. The plaintiff, in her com-

plaint, alleged that she had kept the money received by her from the defendant, and was ready and willing to pay the same to him upon the delivery of the deed revesting her with the title, and the decision and judgment protect the defendant in this regard. The suit is between the original parties, and the rights of third persons have not intervened to complicate the restoration of the parties to their former position; and we are satisfied that the disposition made of the case by the court below did no violence to the facts, and no injury to the litigants. The judgment should be affirmed, with costs to the respondent.

Judgment affirmed, with costs. All concur.