R. W. BRADEN, Appellant, v. O. H. HOLLEN et al., Appellees.

BROKERS: Compensation—When Compensation Earned—Broker Becoming Purchaser. A broker may not base a claim to commission on the finding of a purchaser for his principal's property on terms materially different from those authorized by the principal, nor on a manipulation of the deal without the knowledge or consent of the principal, by which he (the broker) was to become both purchaser and seller of the property.

*Appeal from Decatur District Court.*—THOS. L. MAXWELL, Judge.

WEDNESDAY, JUNE 20, 1917.

SUIT by plaintiff to recover a commission for finding a purchaser for the sale of real estate. The answer was a general denial. The cause was tried to the court without a jury. Judgment for the defendant, and the plaintiff appeals.—*Affirmed.*

*C. W. Hoffman* and *J. S. Parrish,* for appellant.

*O. M. Slaymaker,* for appellees.

EVANS, J.—The plaintiff was a real es-
BROKERS: com-  tate agent, and the defendant Hollen was
pensation: when
compensation  the owner of a farm of 120 acres. Hollen
earned: broker
becoming pur-  listed his farm with Braden for sale, giving
chaser.
him an exclusive agency for the period of 30 days. The terms of the agency were that the farm should be sold at the price of $90 per acre net to the owner, and that the commission of the agent should be the surplus over such net price, sale to be subject to an encumbrance of $4,800, and the balance of $6,000 to be paid in cash or within 30 days. Before the expiration of 30 days, the plaintiff entered into an oral contract in the name of his principal for the sale of the farm. The proposed purchaser was the Humeston State Bank, a corporation organized under the banking laws of Iowa. The agreed price was to be $136 per acre, and in payment thereof, the purchaser was to convey a certain hotel property at the price of $8,000. This would leave a margin of $3,520 to be paid in money. The plaintiff stipulated also with the purchaser that $5 an acre should be allowed as rent of the land until March first following. He agreed also to furnish an abstract of title, and to procure the execution of the contract at the town of Weldon. The plaintiff thereupon notified

the defendant that he had sold the land, and asked for a conveyance. It does not appear that he at that time advised the defendant of all of the terms of the alleged contract of sale. He did advise him in effect that the defendant would receive $90 net per acre. The defendant had in fact previously sold the land to Armstrong, but had failed to notify Braden. When Braden requested a conveyance, Hollen advised him that he had sold the land to Armstrong. Some effort was made to induce Armstrong to accept the purchaser, which he refused to do. Hollen likewise refused. Plaintiff brought this action to recover the difference between $90 an acre and $136 an acre, being $5,520. Several reasons were put forward in the trial court why the defendant should not be deemed liable, including the following: (1) That the previous sale by Hollen terminated the agency as a matter of law, regardless of notice; (2) that the Humeston State Bank was not authorized by law to enter into the contract which it proposed, and that such contract could not have been enforced against it; (3) that the terms of the proposed sale were not in accordance with those authorized by the defendant, in that the defendant never agreed to accept the hotel property at $8,000, nor did the proposed purchaser ever agree to pay to the defendant a sum of $6,000 over and above the encumbrance. There was further alleged excess of authority in that the plaintiff agreed to furnish an abstract of title and agreed to a particular place of performance and to a provision for paying interest or rent, all of which were beyond the authority of the agent to promise.

We need not pass upon all the questions thus raised. What is plain is that the purchaser which the plaintiff produced had never agreed to the terms of sale which the defendant had made; and the defendant had never agreed to the terms of purchase which the Humeston State Bank offered. That is to say, the proposed purchaser and the

owner never agreed to the same terms, nor did the proposed purchaser ever agree to such terms as the plaintiff was authorized to make as an agent for the defendant. What was really in the mind of the plaintiff was that he himself would comply with defendant's terms as owner and with the bank's terms as a purchaser, and that he himself would accept the respective proposals of each. He would thereby accomplish the sale by two contracts instead of one, and he would become a party to each contract. It was not competent for him so to do. He was an agent of his principal, and not a party to the contract. Though he had an exclusive agency, he could not become a purchaser without the consent of his principal. His compensation was to be a commission, and not a profit. According to his own testimony, he proposed to take the hotel property and to mortgage the same for an amount sufficient to make up the purchase money due to the defendant. But, confessedly, he could not do this until he obtained a conveyance from the bank; and he could not get a conveyance from the bank until he got a conveyance from Hollen. It was in this sense that he claims to have tendered to Hollen payment of the full amount due. Indeed, the plaintiff did not, in the first instance at least, advise the defendant of all the terms of his oral contract with the bank, nor did he advise the bank of the terms upon which he was authorized by the defendant to sell. If Hollen had conveyed to the bank, he would thereby have ratified the acts of his agent, and would have assumed all obligations arising therefrom. Clearly, the position assumed by plaintiff was that of a party in interest attempting to make a profit out of two contracts and proposing to become a party to each and to perform them both. This was clearly inconsistent with his agency relation to his principal, and could be assumed by him only by the consent of his principal. *Chezum v. Kreighbaum,* 4 Wash. 680 (30 Pac. 1098); *Turn-*

*ley v. Micheal,* (Tex.) 15 S. W. 912; *Kramer v. Winslow,* (Pa.) 18 Atl. 923; *Blanchard v. Jones,* 101 Ind. 542. In the *Chezum* case it was said:

"That an agent authorized to sell property at a sum not less than a certain amount, which is to be net to the seller, acts in making the sale thereunder as the agent of the seller, and not as principal, seems to us clear. The owner of the property has fixed in his own mind the least sum which he is willing to take, and he, therefore, contracts with the agent that, in acting for him, he must have that sum in view as coming net to him. But it does not at all follow that the agent acting under such power is entitled to other benefit of the good bargain which he may make for the owner than that thereby his commission or other compensation under the contract may be increased. That such a contract, when it shows upon its face that an agency is created thereby, must be construed as above, is too clear to require the citation of authorities. If the party acts simply as agent, then his principal must get the benefit of his good bargain; and the fact that the conditions upon which he is forced to make the sale provide for a net, instead of a gross, amount to the owner, can have no influence in changing the character of the relation established by the contract. Courts are inclined to construe a contract of this kind to be that of agency, rather than a simple option on the part of the person acting thereunder; and, however strong the language used by the owner may be, yet if there is anything in connection with the contract which shows an intent to create an agency, rather than to make a sale of the property, the person acting thereunder will not be allowed to get any benefit therefrom other than such compensation as may be awarded to him by the contract."

Our conclusion at this point is necessarily decisive of the case. The judgment below is accordingly—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.