# HARM DOYEN v. CALIX F. BAUER AND ANOTHER.[1]

October 24, 1941.

No. 32,896.

[1]Reported in 300 N. W. 451.

*William Stradtmann,* for appellant.
*Schmitt, Johnson & Farrish,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues to recover from defendant as his agent to procure a purchaser of his farm the difference between the agency list and actual sale price which defendant received and by fraud appropriated by falsely representing to plaintiff that the list was the best price obtainable, concealing the fact that as such agent he had an actual purchaser at a higher price, negotiating a sale to the purchaser at the higher price, receiving the purchase money, and accounting to plaintiff for only the list price.

For convenience, we shall, as the parties did, speak of acreage and prices in round figures.

Plaintiff was the equitable owner of a 160-acre farm as vendee under a contract for deed with one Wrucke. He entered into negotiations with defendant, the cashier of the local bank, with whom he had dealt and consulted concerning his business for some seven or eight years. Defendant undertook to procure a buyer for plaintiff's farm at not less than $105 per acre and to procure the purchase for plaintiff of what was known as the Butzer farm at $80 per acre.

Defendant procured one Conrad to purchase plaintiff's farm at $123 per acre. Next he obtained an option to purchase the Butzer farm in his own name. Then he and plaintiff entered into a contract for the exchange of plaintiff's for the Butzer farm and $3,200

to boot. Plaintiff was named therein as the vendor of his own and the vendee of the Butzer farm, and defendant as the vendee of plaintiff's and the vendor of the Butzer farm. Then defendant entered into a contract as vendor to sell the plaintiff's farm to Conrad as vendee for $19,680 or $123 per acre.

Subsequently defendant obtained a deed conveying the Butzer farm to plaintiff's wife. He arranged for a new contract for deed between Mrs. Wrucke, as vendor, and Conrad, as vendee, under which she sold plaintiff's farm to Conrad for the balance due to her under plaintiff's contract for deed. Defendant was not named in any deed or contract by which the deals between the parties were consummated.

Defendant received $19,680 for plaintiff's farm from Conrad. He paid $14,000 for the Butzer farm. He gave plaintiff a credit for the $3,200, leaving a difference of $2,480 which he received and for which he rendered no account.

Plaintiff claimed that in all he did defendant was his agent and that he was guilty of fraud in concealing the fact that the sale was for $123 instead of $105 per acre and in misleading plaintiff to believe that the contract for the exchange of the farms was simply to facilitate the transfer of plaintiff's farm to Conrad by defendant as plaintiff's agent rather than a transfer to him in his own right. These claims defendant denied and contended that the plaintiff with full knowledge of the facts intended to transfer his farm to him in his own right and not as plaintiff's agent.

Plaintiff's testimony was that he hired defendant as his agent to sell his farm and to purchase the Butzer farm for an agreed commission of $160, which was computed apparently on the basis of $1 per acre for selling his farm. It is not disputed that defendant charged plaintiff $160 for handling the deal and rendered a statement showing the charge. Defendant denied the hiring, but did not satisfactorily explain the commission which he charged and received as agent. Conrad testified that defendant told him that plaintiff was going to pay him a commission of $160 or $1 per acre for handling the deal. Defendant suggested to Conrad that

he ought to pay him $100 additional compensation, but this Conrad refused to do. Defendant led him to believe that plaintiff was the vendor and would receive the purchase price of $123 per acre which he paid.

Plaintiff testified that after he hired him as his agent defendant produced Conrad as the intended purchaser of his farm. Nothing was said concerning the fact that Conrad was willing to buy at $123 rather than $105 per acre. This defendant admits. Plaintiff consequently understood that Conrad intended to buy at the latter figure. Both plaintiff and Conrad testified that they were prevented from communicating with each other during the pendency of the negotiations by defendant's advice to each not to contact the other and his representation to each that the other was peculiar and, if contacted, might spoil the intended sale.

In that situation, defendant obtained plaintiff's signature (and his wife's also) to the contract for the exchange of the farms by further representing that he had completed arrangements to procure the Butzer farm and that they were ready to go ahead with the transfers as they had arranged. He represented that the contract was only "a piece of paper," which he wanted plaintiff to sign so he would have "a little something to go by"; that it was an agreement under which plaintiff was to get the Butzer farm and $3,200 to boot for his farm. Except as stated, defendant did not tell him the terms of the contract. He did not tell plaintiff that he and not Conrad was named therein as the vendee; that he and not the owners of the Butzer farm was named therein as the vendor thereof, and that he had taken an option to purchase that farm in his own name. No selling price for either farm was stated in the contract. Plaintiff, who had gone only as far as the third grade in school, did not read the contract. He signed in reliance on defendant's representations that it was a contract to effectuate the arrangements which they had made to sell his farm and procure the Butzer farm.

All the papers were prepared by defendant, who, after obtaining plaintiff's and Conrad's signatures, retained the same without giv-

ing either of them a copy. Conrad wanted a lawyer to look after the business for him but did not get one because defendant told him that a lawyer was not necessary and that he could handle the deal just as well as a lawyer could.

About six months after the transactions were closed plaintiff and Conrad met and discussed the same. As a result of the discussion, they discovered for the first time the true facts of the case. Then they confronted defendant, and Conrad accused him of putting over a "crooked deal" on them. This, of course, he denied, but, according to their testimony, he made no satisfactory explanation of the deal as they requested.

The jury were instructed to determine whether or not defendant was plaintiff's agent as claimed, and, if so, whether or not he was guilty of fraud in procuring the contract from plaintiff in which defendant was named as vendee of his farm and in failing to disclose to plaintiff that the sale price to Conrad was $123 instead of $105 per acre. In stating the facts in the charge, the court said that, while plaintiff knew that he was selling his farm and that he was to get the Bützer farm and $3,200 to boot, "plaintiff does not admit that he knew he was making any contract with the defendant Bauer." No exception was taken to the quoted portion of the instruction, but it was assigned as error in the motion for new trial.

Plaintiff recovered a verdict for $2,400, which represented the amount not accounted for minus certain admitted deductions not here material. Defendant appeals from the order denying his motion in the alternative for judgment notwithstanding the verdict or a new trial.

Here, defendant contends that the evidence does not support the findings implicit in the verdict of agency and fraud; that all the transactions and negotiations between plaintiff and defendant, including the agency relationship and all that was done in virtue of it, were integrated in the contract for the exchange of the farms so as to render evidence of such facts inadmissible as tending to contradict, alter, vary, and amend the contract; and that

the court erred by stating in the charge contrary to the fact that, while plaintiff admitted the signing, he did not know that he was making a contract with defendant.

■ The principal's testimony to the effect that he employed the agent is primary and original evidence of the fact of agency. Ruppert v. Muelling, 132 Minn. 33, 155 N. W. 1039; 1 Dunnell, Dig. & Supp. § 149. A party's admissions by declarations and conduct are substantive evidence of the facts to which they relate. Williams v. Jayne, 210 Minn. 594, 299 N. W. 853. Plaintiff's testimony that he employed defendant as his agent upon the terms stated and Conrad's testimony that defendant made an explicit admission that he was so employed, each of which standing alone is evidence of agency, amply support the finding of that fact.

■ An agent is bound to act solely for the benefit of the principal in all matters connected with the agency. His first duty therefore is loyalty to his principal. Hence an agent is not permitted to put himself in an antagonistic relation to his principal and is required to exercise the utmost good faith toward his principal in all their dealings. As a matter of good faith, it is the duty of an agent to communicate to his principal all facts of which he has knowledge which might affect the principal's rights or interests. And, since the agent is under the duty to act solely for the benefit of the principal, all profits made in the course of the agency belong to the principal whether they are the fruits of performance or violation of the agent's duty. Smitz v. Leopold, 51 Minn. 455, 53 N. W. 719.

Because the duty of loyalty precludes the agent from putting himself in an antagonistic relation to his principal, the authority of an agent to sell or to procure a purchaser comprehends transactions only with third persons. Such an agent may not became a purchaser without the principal's consent. Tilleny v. Wolverton, 46 Minn. 256, 48 N. W. 908; Id. 50 Minn. 419, 52 N. W. 909; 1 Dunnell, Dig. & Supp. § 200. The rule, which is based on considerations of common sense and honesty to prevent agents from compromising their principal's rights and interests in favor of their

own and to remove the temptation of agents to be disloyal to their principals, is enforced rigorously as a matter of public policy. 2 Mechem, Agency (2 ed.) § 1198. Where an agent authorized to sell himself becomes the purchaser without the principal's consent, he is guilty of fraud as a matter of law whether he purchases directly or indirectly. Norby v. Security State Bank, 177 Minn. 127, 224 N. W. 843; Christianson v. Mille Lacs Land & Loan Co. 113 Minn. 120, 129 N. W. 150; Merriam v. Johnson, 86 Minn. 61, 90 N. W. 116; Smitz v. Leopold and Tilleny v. Wolverton, *supra;* 1 Dunnell, Dig. & Supp. §§ 195 and 200.

Of course, the agent may purchase from the principal where the latter knowingly consents. Selly v. Sperry Realty & Inv. Co. 181 Minn. 186, 232 N. W. 6. But the agent seeking to change the relation from principal and agent to that of vendor and vendee is, prior thereto, under the duty of bringing the fact of the intended change to the attention of the principal in such an unmistakable manner as to avoid all chance of misunderstanding. "If dual interests are to be served, the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all its stark significance." Wendt v. Fischer, 243 N. Y. 439, 154 N. E. 303, 304.

In the instant case, there was not only failure to make the requisite disclosure by defendant as plaintiff's agent, but active fraud as well by which the fact of such change was concealed. There is no pretense of an express disclosure. In lieu thereof, it is claimed that plaintiff was informed that defendant had become the purchaser by the terms of the contract for the exchange of the farms. The testimony that defendant as plaintiff's agent produced Conrad as the purchaser upon the terms at which plaintiff was willing to sell, that defendant had completed arrangements to procure the Butzer farm, that consequently they were ready to go ahead and that the contract was only to give defendant something "to go by" supports a finding that defendant misled plaintiff to believe that the purpose and effect of the contract was to enable defendant as plaintiff's agent to transfer his farm to Conrad and acquire the Butzer farm for plaintiff and not to transfer plain-

tiff's farm to defendant as the purchaser and to purchase the Butzer farm from him as the vendor. What else should plaintiff have believed without reading the contract if their prior arrangement to exchange the farms was to be carried out? An agent is guilty of fraud where he induces his principal to sign an instrument transferring title to property to himself by a false representation relied on by the principal that the instrument transfers the title to an intended purchaser, notwithstanding the fact that the principal had an opportunity to read the instrument before signing it and to determine the fact to be otherwise than as represented. Smitz v. Leopold, 51 Minn. 455, 53 N. W. 719; Calmon v. Sarraille, 142 Cal. 638, 76 P. 486; Fisher v. Lee, 94 Iowa, 611, 63 N. W. 442; Bassett v. Brown, 105 Mass. 551; Davenport v. Casey (Mo.) 222 S. W. 791; Clark v. Bird, 66 App. Div. 284, 72 N. Y. S. 769.

Defendant's fraud prevented plaintiff from knowing that he was dealing with him as a purchaser instead of as his agent. Consequently, plaintiff did not know that their relationship was being changed from principal and agent to vendor and vendee.

Quite aside from the fraud involved in becoming the vendee of plaintiff's farm unbeknown to him, defendant was guilty of fraud by repudiating the agency and attempting to purchase from plaintiff at $105 per acre and reselling to Conrad at $123 per acre. Whether the sale be made to a third person or to the agent himself, the agent is guilty of fraud where he fails to communicate to his principal the fact that a more advantageous price can be procured than that at which the sale is actually made, for the reason that the duty of loyalty imposes upon the agent the obligation to inform his principal of all facts affecting his rights or interests. Kingsley v. Wheeler, 95 Minn. 360, 104 N. W. 543; Holmes v. Cathcart, 88 Minn. 213, 92 N. W. 956, 60 L. R. A. 734, 97 A. S. R. 513; Rodman v. Manning, 53 Or. 336, 99 P. 657, 1135, 20 L.R.A. (N.S.) 1158; Moseley's Adm. v. Buck, 3 Munf. (Va.) 232, 5 Am. D. 508; 1 Dunnell, Dig. & Supp. §§ 195 and 205.

Where the agent has obtained the principal's property by fraud, the principal has an election of remedies to have the transfer set aside or to recover damages. The principal may affirm and ratify the transaction and recover any profits made by the agent by the sale where the agent has transferred the property to a third party as defendant did by the sale to Conrad. Norby v. Security State Bank, 177 Minn. 127, 224 N. W. 843; Annotation, 62 A. L. R. 71. Recovery is permitted to compel the agent to disgorge that which belongs to his principal and which the agent is not entitled in conscience and equity to retain. Schick v. Suttle, 94 Minn. 135, 102 N. W. 217; Sandoval v. Randolph, 222 U. S. 161, 32 S. Ct. 48, 56 L. ed. 142.

The evidence supports findings of fraud on both grounds submitted below.

■ The argument supporting the contention that the parol evidence rule was violated proceeds upon the erroneous supposition that plaintiff seeks to enforce a liability based on the contract for the exchange of the farms. The liability for secret profits which defendant fraudulently obtained is based not on the contract for the exchange of the farms but on the fraudulent breach of his duties under the contract of agency. Defendant's appropriation, through fraudulent breach of his duty of loyalty to plaintiff as his principal, of the difference between the price at which the property was listed with defendant for sale and the actual selling price, was a tort. Emmons v. Alvord, 177 Mass. 466, 59 N. E. 126; Restatement, Agency, §§ 401 and 402(2), comment, subsection (2). It makes no difference that the wrong was committed when performing a duty under the agency contract with the principal. As pointed out in Emmons v. Alvord, *supra,* the tort may be said to spring out of the performance of duties under the contract.

The liability for tortious breach of duty as agent is entirely separate and distinct from that of liability under the contract for the exchange of the farms. The contract for the exchange of the farms provided defendant with ostensible title under contract to

receive the purchase money from Conrad. It was but the means by which he perpetrated a fraud on plaintiff in violation of his duties as agent. It is true that by electing to recover the secret profits which defendant derived from the sale to Conrad plaintiff ratified and affirmed the contract; but he did not thereby ratify and affirm the fraud by which it was obtained. Neibuhr v. Gage, 99 Minn. 149, 108 N. W. 884, 109 N. W. 1. Much less did he thereby ratify and affirm the tortious breach of duty owing to him under the entirely separate and distinct contract of agency.

No term of the contract for the exchange of the farms was altered, varied, or amended by permitting proof of the agency and the tortious breach by defendant of his duties as agent. The contract for the exchange of the farms was given effect according to its terms as a result of ratification and affirmance thereof by suing to recover the secret profits which defendant received. Norby v. Security State Bank, 177 Minn. 127, 224 N. W. 843. The parol evidence rule is not violated where, as here, no term of the contract is altered, varied, or amended by extrinsic evidence. Kramer v. Winslow, 130 Pa. 484, 18 A. 923, 17 A. S. R. 782.

Nor was any term of the agency contract altered, varied, or amended by plaintiff's election to sue defendant for fraud. An election of remedies by the principal for the agent's breach of duty involves no change of the agency contract. Beatty v. Guggenheim Exploration Co. 225 N. Y. 380, 122 N. E. 378.

When the charge is considered as a whole it is quite obvious that the court in the part to which exception is taken meant that plaintiff did not admit that he knowingly made a contract with defendant as the purchaser of his farm. The charge fairly stated all the facts and fairly submitted the issues. The point is without merit.

Affirmed.

Mr. Chief Justice Gallagher took no part in the consideration or decision of this case.