### BARRY v. CRANE BROTHERS MANUF'G CO.

*(Circuit Court, N. D. Illinois.* November 10, 1884.)

1. PATENTS FOR INVENTIONS—BARRY PATENT FOR REAMING AND SQUARING PIPES —NOVELTY.
     Patent No. 91,201, issued to William Barry, June 15, 1869, for an "improvement in compound tools for reaming and squaring pipes," is void for want of novelty.

2. SAME—IMPLIED LICENSE—EMPLOYE USING HIS INVENTION IN EMPLOYER'S BUSINESS—ROYALTY AND PROFITS.
     An employe who is the owner of a patent cannot introduce his patented device into his employer's business without the employer's consent, and without a special agreement to pay him, and afterwards demand royalties or profits and damages for the use of such device, especially where the invention has been developed and brought to a practical condition at the expense of the employer.

In Equity.

*E. J. Hill*, for complainant.

*West & Bond*, for defendant.

BLODGETT, J. This bill seeks an injunction and accounting by reason of the alleged infringement of patent No. 91,201, issued to complainant, dated June 15, 1869, for an "improvement in compound tools for reaming and squaring pipes." The defenses set up are: (1) That the patent is void for want of novelty; (2) an implied license to the defendant from the complainant to use the device in question. The tool described in this patent seems to be mainly useful for the purpose of boring or reaming out brass castings, thereby cutting away the scale and sizing the opening or orifice for the purpose of cutting screw-threads thereon, and also for squaring the ends of the casting, so as to make a tight joint between the brass and the iron pipes to be connected therewith.

The proof in the case shows that complainant, for some time prior to obtaining the patent in question, was in the employ of the defendant manufacturing company as foreman of their brass finishing department; that, while in such employment, he produced or made the tool in question, experimented with it, made operative tools, which he put into use in his department of defendant's factory, and finally introduced into the business of defendant six or seven different sized tools, for the purpose of operating upon different sized brass castings. Complainant continued in defendant's employ for about four or five years after obtaining his patent, during all of which time the tools in question, under his supervision, were manufactured and put in use, with no claim on his part for compensation and no express agreement on the part of the defendant to pay him. There can be no doubt, from the proof, that the complainant conducted his experiment and caused the tools now used by defendant to be manufactured at defendant's expense, and it would also seem the natural inference, from the proof, that complainant introduced the tools in question into use in defendant's business more as an adjunct to his own employment, as its foreman and department manager, than with the expectation, at that time, of receiving any royalties or other compensation for his patented device. There is no proof that defendant has, since complainant left its employ, made any new tools, but only that it has continued to use those which complainant made and caused to be put in operation in its shop. I am therefore of opinion, that, by introducing those tools into use in the defendant's business, complainant has licensed or consented to the use of those tools by the defendant, not only for the time that he was in its employ, but so long as the tools shall last. It can hardly be possible that an employe, himself the owner of a patent, can introduce his patented device into his employer's business without his employer's consent, and without a special agreement to pay him, and afterwards turn around and demand royalties or profits and damages from his employer for the use of such device, especially in a case like this, where the invention, if there be an invention in this tool, has been developed and brought to a practical condition at the expense of his employer.

I do not intend to be understood as holding that the employer became the owner of this patent, but that it acquired, under the facts, the right to use the particular tools which complainant made and put voluntarily into use in defendant's factory at defendant's expense.

Although it may hardly be necessary to the disposition of this case, I will further say that the proof in this record is such as to fully, as I think, sustain the position that this patent should and must be held void for want of novelty. The characteristics of the complainant's patent, and wherein it differs from the ordinary and old-fashioned drills or reamers, is in the insertion of removable cutters to do the reaming and the squaring. There is no doubt but what both these processes could have been accomplished, and have been heretofore accomplished, with other tools. The advantage claimed for the complainant's tool is that when the cutters become dull or worn out they can be taken out and sharpened or replaced with new ones; and, if this were a new device, if the complainant was the first to show a removable cutter in a tool for reaming or squaring or boring brass or iron, it might be such an improvement over the former reaming and squaring tools as would entitle him to a patent; but the proof in this case is ample to show that tools provided with cutters, like the cutters, C and E, described in this patent, had been used long prior to the time complainant entered the field. There can be no doubt, from the proof, that implements like defendant's Exhibit Goode and defendant's Exhibit Kley had been in use for upwards of 10 years, at least, prior to the date of complainant's patent. Both these tools show removable cutters of different shapes, and which it would only require a slight mechanical adaptation to make them do all the work which the complainant's tool has done or is capable of doing. In view of the state of the art, therefore, it seems very clear to me that complainant's tool is nothing but an adaptation, perhaps to a new use, of a tool well known in the art long prior to the date of his alleged invention, and this adaptation is not such as required invention, but simply mere mechanical change, which any machinist, or person skilled in the use of tools, could do. I therefore hold both branches of this defense are sustained by the proof, and the bill is dismissed for want of equity.