CAROLINE SMITZ *et al. vs.* HENRY F. LEOPOLD *et al.*

Argued Nov. 22, 1892.   Decided Dec. 2, 1892.

### Evidence of Agency.

Evidence *held* to justify a finding that defendant was plaintiffs' agent to make sale of their interest in certain land.

### Agent—Breach of Duty. ·

Defendant, having found a proposed purchaser for $100, submitted the offer to plaintiffs, advising them to accept it as being all that their interest was worth, and transmitting for their execution a conveyance to his wife as a means of ultimately transferring the title to the proposed purchaser, and representing to them that it was to be used for that purpose, and not suggesting that either he or his wife was the contemplated purchaser.  Relying on these representations, plaintiffs executed and transmitted the deed, and defendant remitted to them the $100.   The proposed

purchaser refused to take the land. About 15 months afterwards, the land having in the mean time greatly increased in value, the defendant, without having informed the plaintiffs that the purchaser had not taken the land, or that it had thus increased in value, placed the deed to his wife on record, and sold the land to another party for $6,588. *Held,* that in failing to inform the plaintiffs that the proposed purchaser had declined to buy, and that the land had thus increased in value, and in using the deed to his wife for his own benefit, the defendant was guilty of a breach of duty as agent, and that plaintiffs were entitled to recover from him the profit which he had made out of the sale.

Appeal by defendants, Henry F. Leopold and wife, from an order of the District Court of St. Louis County, *Stearns,* J., refusing a new trial.

*Marson & Marson,* for appellants.

*Edson & Hanks, Johns, Michael & Johns, Holcomb & O'Reilly,* for respondents.

MITCHELL, J. The only questions open to the appellants under their assignments of error are—*First,* whether certain of the findings of fact were justified by the evidence; and, *second,* whether "the judgment directed is authorized by the findings of fact or the allegations in the pleadings." Indeed, it seems to us that the determination of the case must turn wholly upon the question whether the second finding of fact was justified by the evidence; for, if the plaintiffs and the defendant Henry F. Leopold were dealing with each other entirely at arms' length, it would be more than doubtful whether any cause of action was made out, while, on the other hand, if the latter was the agent of the former for the sale of this land, it can hardly admit of doubt that he was guilty of such a violation of duty as to make him liable to them for all the profits which he made out of it.

The second finding is that "the defendant Henry F. Leopold undertook to look after the interests of the plaintiffs in said lands, and try to dispose of the same for them." This does not find in so many words that Leopold was the agent of the plaintiffs, but this is not important. Whenever one party undertakes, with the authority, express or implied, of another party, to transact some business for the

latter, or to look after his interests, in dealings with third parties, an agency is created; and it is not material whether this is done at the solicitation of the principal or that of the agent, or whether the services of the latter are to be gratuitous or for a compensation. The finding is, in effect, that Leopold was acting in the premises as plaintiffs' agent.

As no error is assigned in the admission of evidence tending to prove this agency, it is probably not necessary to consider the allegations of the complaint, but it may be said that, while it does not use the word "agent," it does allege facts which would constitute the relation of principal and agent. As well suggested by the trial judge, it charges the defendant with representing himself to plaintiffs as acting for them in the sale of the land, and that they, on the strength of his own representations, treated him as their agent, which is enough to hold him to the duties and responsibilities of an agent.

The evidence is ample to justify the finding. The land was situated some fifteen or twenty miles from Duluth, where Leopold, a relative of the plaintiffs, resided. The plaintiffs resided in Chicago, and knew nothing of its character or value. They had acquired title to it quite a number of years before as widow and heirs of Henry Smitz, deceased, and, thinking it to be of little value, had done nothing with it until their attention was called to it by a letter from the agent of a railway company, desiring to procure the right of way through it. Thereupon, in the summer of 1887, the husband of one of the plaintiffs, and who was acting for them, being in Duluth, made some inquiries regarding it of Leopold, and perhaps of others; and being informed that it was of small value, and incumbered with delinquent taxes to a considerable amount, stated to Leopold that, if he could do anything for them with it, he would be glad to have him do so, and Leopold assured him he would do everything he could, "the same as he would for his own folks." Some of the plaintiffs testify to other communications with him, either personally or by letter, in which they requested and he promised, in substance, that he would get what he could for them out of the land. Leopold himself admits that the husband of one of the plaintiffs above referred to gave him a memorandum of the land, saying he wished he

would try to dispose of it, and that he replied that he would "see what he could do with it," or that "he would see what he could get out of the property."

The following February (1888) he addressed a letter to Caroline Smitz, one of the plaintiffs and the mother of the others, stating that he had found a man who had offered him $100 for a quitclaim deed, and advising them to accept it, as the land was of small value, and heavily incumbered with taxes, from which it would not pay them to redeem. In reliance upon these representations, they accepted the offer, and thereupon Leopold forwarded to them for execution a quitclaim deed, running to his wife. The evidence tends to shows that the reason or explanation which he gave why the deed ran to his wife was that it was merely a safer (to them) way of ultimately transferring the title to the proposed purchaser, and that it was to be used for that purpose; and there was no suggestion that either he or his wife was the real purchaser, and there is nothing to indicate that plaintiffs supposed such to be the fact. The deed was executed and transmitted accompanied by a draft for the $100 which Leopold paid on delivery of the deed to him.

We think the evidence would have justified the court in finding that Leopold himself, in the name of his wife, was the real purchaser, and that the pretended purchaser was a mere cover. But the court has found that he had in fact found a purchaser who verbally offered $100, but subsequently declined to consummate the purchase, and this finding we must accept as conclusive. The court does not find what the land was then worth, but does find that it had no fixed market value at that time. The decided preponderance of the evidence is that, while it was worth considerably more than $100, yet its value was small compared with the greatly increased value which it had acquired by 1890. Leopold, without informing the plaintiffs that the proposed purchaser had not taken the land or that it had in the mean time increased so greatly in value, in the spring of 1890 placed the deed to his wife on record, and then sold the land to an innocent purchaser for $6,588, half cash and half secured by a purchase-money mortgage running to his wife. The circumstantial evidence in the case amply justified the court in finding that Mrs. Leopold

invested no money in the land, but that Leopold used her name in the transaction for purposes of his own.

Having discovered that, as to two of the grantors, the deed executed by the plaintiffs in 1888 was invalid, or at least materially defective, in September, 1890, Leopold went to Chicago, and obtained from them, without consideration, a new conveyance, representing to them, in substance, that it was desired to perfect the title of the purchaser of 1888, and concealing from them the facts that such purchaser had never taken the land, that it had subsequently largely risen in value, and that he himself had sold it for so large a price.

Loyalty to his trust is the first duty of an agent, and he must not put himself in relations antagonistic to his principal.

An agent to sell cannot purchase of himself without his principal's consent, and, if he does, the principal may repudiate; and if the property has passed into the hands of an innocent purchaser, from whom it cannot be recovered, the principal is entitled to the proceeds or their value. All profits made in the course of an agency belong to the principal, whether they are the fruits of the performance or of the violation of the agent's duty. It was a breach of duty, and consequently an act of bad faith, on part of Leopold, as plaintiffs' agent, not to inform them that the proposed purchaser to whom they supposed they were selling in 1888 had failed to take the land, and attempt to use the deed to his wife for the purpose of appropriating to his own benefit the subsequent large increase of value of the land, which he also concealed from them. The finding that the purchase money mortgage is still in the possession of the defendants is justified by the admission that it was taken in Mrs. Leopold's name, and the absence of any evidence that it has been disposed of. The finding that Mrs. Leopold is insolvent is wholly immaterial.

Order affirmed.

(Opinion published 53 N. W. Rep. 719.)