GOODHUE FARMERS' WAREHOUSE COMPANY v. JOHN O. DAVIS
and Others.[1]

August 16, 1900.

Nos. 12,116—(214).

## Profits of Agent from Use of Principal's Name.

A managing agent of a warehouse company, without disclosing the fact to his principal, made profits in the business use of the name and credit of the company, and outside of the scope of its corporate authority. *Held*, that such profits belonged to the company.

## Bond—Liability of Agent's Sureties.

Where the sureties of such agent signed an obligation that such agent should faithfully discharge his duties, and collect all accounts, and duly account for every transaction, etc., *held*, that such sureties are liable to the obligee on such bond for the payment of the profits made as above set forth, and retained by the agent.

## Directed Verdict.

*Held*, that an instruction, upon conceded facts, to find a specific sum, was properly given in this case.

[1] Reported in 83 N. W. 531.

Charge to Jury.

> *Held*, that certain instructions of the trial court upon an issue in this case were argumentative and prejudicial upon the submission of such issue.

Action in the district court for Goodhue county to recover $5,169.-64 and interest on a bond executed by defendant John O. Davis, as principal, and by defendants Francis Davis and Lewis Johnson, as sureties. The case was tried before Williston, J., and a jury, which rendered a verdict in favor of plaintiff for $5,703.43. From an order denying a motion for a new trial, defendants severally appealed. Reversed.

*J. C. McClure*, for appellants.

*O. M. Hall*, for respondent.

LOVELY, J.

The plaintiff was a co-operative association organized under the laws of this state, and by its articles of incorporation authorized to conduct the business of receiving, storing, selling, and forwarding all kinds of grain and flax. The defendant John O. Davis was the general manager, secretary, and a director of this corporation, and defendants Francis Davis and Lewis Johnson were the sureties upon the bond which he was required to give, the conditions of which were that the principal

"Should faithfully and to the best of his ability perform the duties of general manager of said plaintiff, to the best interests of its stockholders, according to the by-laws of said plaintiff, and collect all accounts, and pay the same to the treasurer, and truly account for every transaction in its business."

Under the by-laws of the corporation the stockholders were authorized to bring their grain to the warehouse of the plaintiff, to be received, forwarded, and sold, for which they were to pay one cent per bushel to the company, as compensation for such service. John O. Davis continued to act as general manager from August, 1895, until November 5 of the same year, at a salary of $50 per month; receiving from the stockholders their grain, and paying for it by orders on the plaintiff's treasury. During this time the grain so sold and the proceeds were fully accounted for, but after the latter

date John O. Davis purchased all the grain received at the elevator for himself, and, having thus become the owner of it, shipped it and sold it for his own profit, which course of dealing continued until April 1, 1896. After allowing on the grain purchased one cent per bushel, he received a profit, which he retained, of $3,538.44. The grain so purchased by the manager was paid for through orders on the treasury. He invested no money in the new enterprise; gave no information thereof to the stockholders and directors; used the name of the corporation, its blanks, credit, and business connections, for the business so conducted, without the plaintiff's knowledge or consent, during the whole period referred to. After he had entered upon this enterprise, the proceeds of the first sale furnished the capital for the next, and so on; but the original capital— the money which purchased the first shipment for his own profit— was money in the treasury of the plaintiff, for which he has accounted. These facts were uncontroverted, and the trial court directed the jury to return a verdict in favor of the plaintiff for the full amount of such profits, with interest.

In addition to the above claim, it was sought to hold defendant John O. Davis for orders drawn by him, as general manager, upon the treasury, payable to himself, for the sum of $1,331.20. Of this sum, it was claimed that $66.50 was used by him in the payment of certain expenses in the plaintiff's business; and the balance of $1,264.70, he claims to have drawn from the treasury to pay himself, as a stockholder, for his own barley, which he had shipped and sold as agent of defendant. Upon the testimony of the manager at the trial, under proper issues, the question of fact was contested whether this account and explanation of the disposition of the money for expenses and for his own barley was truthful, and, if so, whether he was to have credit for that sum. The verdict of the jury against all the defendants includes the entire claim,— as well for the profits which were received and appropriated as the sum which John O. Davis claims to have paid himself for expenses and for his own grain. After motion for a new trial, which was denied, the defendants severally appeal.

Appellants urge that the manager, Davis, was acting beyond the scope of his authority; that his duties to the corporation included

only the duty to receive, forward, and sell the grain of the stock-holders, and that by the payment of one cent per bushel for all such grain he had complied with his duty in that respect; and that neither he nor his sureties were liable for any profits which he had received by dealing with the grain as purchaser upon his own account.

As the salaried agent of the plaintiff, the manager had no right to use his position, and the opportunities afforded by it, or to use its warehouse, business equipment, or its name, credit, or money, for his personal profit. It is not open to dispute that he did so, and it follows that whatever profits were derived from his transactions in that respect belonged to the plaintiff. Mechem, Ag. § 469. It was the theory of the manager that inasmuch as his principal had received pay for the grain at its going price, and the charge for storage, he had a right to the profits; but the difficulty with this theory is that he was dealing entirely as manager for his principal, and had no right to use its name, credit, or money for his private benefit. By doing so he jeopardized its credit; he encountered risks that might have bankrupted the corporation and involved himself in severe penal consequences. It is the legal dangers of this theory which lie behind the wrecks of many fortunes and characters. It may be that the personal motive of the manager was not bad, but the rule is one which the law, upon the best considerations of public policy, has established, and it cannot be too rigidly enforced.

It is not necessary to determine whether the corporation had power to purchase grain and sell it for profit. It may be conceded that it had not, yet the agent cannot, while engaged in the service of his employer or principal, act in the capacity of both buyer and purchaser, without such principal's consent; and, as stated by this court (MITCHELL, J.) in Smitz v. Leopold, 51 Minn. 455, 53 N. W. 719, in such cases "all profits made in the course of an agency belong to the principal, whether they are the fruits of the performance or of the violation of the agent's duty." This is the general doctrine, and does not seem to be questioned by any authorities to which we have been referred. Thus, profits accruing to the corporation, and belonging to them, should have been paid over and accounted for by the defendant John O. Davis; and the appropriation of such

profits to himself was a plain violation of the conditions of the bond given by the sureties, and supports the order of the trial court directing a verdict for the sum so improperly appropriated.

It is not, and probably could not be, disputed that the claim of the manager that the money received on orders for expenses and grain furnished by himself, and shipped through the warehouse, if well founded, should not have been recovered against him and his sureties; and, had this issue been fairly and properly submitted by the trial court to the jury, the verdict upon that issue would be allowed to stand. But in connection with the charge upon the questions above disposed of, in view of the order directing the verdict for a specific amount, the court below instructed the jury as follows:

"The law does not absolutely prohibit an agent from dealing with himself, but it looks with suspicion upon all transactions of that character, and requires the agent to prove to the satisfaction of the jury that the transactions actually occurred, and were free from fraud. In such cases the agent is allowed to testify in his own behalf, and it is for the jury to determine whether, under all the circumstances of the case, his testimony is entitled to credit." And again: "When an agent bargains or deals with himself, he is often the only witness of the transaction; and, however unfair or fraudulent it may be, it is impossible to contradict the testimony he may give, by other direct testimony. As the law looks with suspicion upon such transactions by an agent, it likewise looks with suspicion upon the testimony which the agent may give of the transaction. In such cases the mere fact that there is no direct contradiction of the agent's own testimony does not preclude the jury from considering all the circumstances of the case, and giving to such testimony just as much or just as little weight as they may think it entitled to."

The trial court had already correctly instructed the jury to return a verdict for the plaintiff for the profits realized by its manager. After this instruction, all further instructions as to the duty of Davis as manager, and his liability for profits, were necessarily mere abstract propositions; but the court thereafter proceeded, and gave at the request of the plaintiff's attorney a series of instructions, covering several pages of printed matter, as to the issue already disposed of by its direction to find a verdict for the plaintiff for the amount of the profits. Such requests and instructions were

not only unnecessary, but were manifestly prejudicial to the defendant upon the remaining issue to be passed upon by the jury; for they singled him out, and charged as to his credibility in a manner tending to discredit him with the jury. His testimony was to be weighed by the jury, in view of all the circumstances of the case, uninfluenced by argument or denunciations from the court, and we regret to say that the instructions quoted above in this respect were decidedly prejudicial. The duty of the court in instructing the jury is to state in a plain and practical way the principles of law, divested of all feeling and emphasis, if possible, that they may understand the law of the case without prejudice. More than this exceeds the province of the trial court, and deprives a trial by jury of its essential value. Harriott v. Holmes, 77 Minn. 245, 79 N. W. 1003.

Since, upon the uncontradicted evidence in this case, the plaintiff is entitled to a verdict for the amount of the profits and the interest thereon, as directed, judgment should be entered for plaintiff for that amount. As to the issues involved in the expenses claimed to have been paid by the defendant John O. Davis, and for the grain for which he claims to have drawn the orders to the amount of $1,264.70, for errors in the instructions of the court a new trial must be ordered.

The order is reversed, and a new trial ordered upon the issues indicated.