STATE v. EMMA YATES and Another.[1]

December 14, 1906.

Nos. 14,928—(17).

**Criminal Law—Charge to Jury.**

It is error for a trial court in a criminal prosecution to review, in its instructions to the jury, in an argumentative manner, the evidence before them for consideration, or to single out and give undue prominence to the testimony of particular witnesses sworn on the trial.

[1]Reported in 109 N. W. 1070.

**Arson.**

    In a prosecution for arson, defendant's substantial rights are held to have been violated in three respects: (a) In the refusal of the court to strike from the record certain incompetent prejudicial testimony introduced by the state; (b) in the action of the court, in its instructions to the jury, in singling out and giving undue prominence to the testimony of particular witnesses; and (c) in the argumentative character of the court's charge as a whole.

Appeal by Emma Yates from an order of the district court for Hennepin county, John Day Smith, J., denying her motion for a new trial, after trial and conviction of the crime of arson. Reversed and a new trial granted.

*Hall & Kolliner,* for appellant.

*Edward T. Young,* Attorney General, *Al. J. Smith,* County Attorney, and *John F. Dahl,* Assistant County Attorney, for the State.

BROWN, J.

Emma Yates, Emma Anderson, and one Erwin A. Perry were jointly indicted, charged with the crime of arson in the first degree. Yates and Anderson were tried together in the court below; and a verdict of guilty returned as to both. Each made a motion for a new trial, and this appeal is from an order denying the motion of Mrs. Yates. The court granted the motion of Mrs. Anderson.

The facts in the case, briefly stated, are as follows: Defendants Yates and Anderson were, on November 23, 1905, and for some time immediately prior thereto, the owners of and conducting a small grocery store in the city of Minneapolis, which was on that day nearly consumed by fire. Circumstances pointed to the conclusion that the fire was purposely started, and suspicion was directed to the owners, Yates and Anderson. Subsequent investigation connected defendant Perry with its origin, and he finally disclosed to the authorities all the facts with reference to it. He related to them, and testified upon the witness stand, among other things, that he started the fire at the instigation of the two women; that he had been acquainted with both women for some time, particularly with Mrs. Yates; that they came to him with the story that they were unable to meet their bills, and that it was necessary to burn the stock of goods in order to obtain an insurance of $800; that he agreed with them to burn the prop-

erty, and, as a preliminary to the commission of the act, constructed a contrivance made up of inflammable material saturated with gasolene and kerosene oil, completely inclosed, and with two candles on the inside. The intention was to light the candles and leave the store, in the expectation that they would later on ignite the machine in which they were placed, and the fire would follow. Perry and both women were at the store about nine o'clock in the evening of the day in question, and all arrangements were then made to carry out the scheme. They intended to light the candles when all were there, but observing a policeman on the opposite side of the street, they changed their mind and left the store together for their homes. Perry, however, returned soon, entered the building and struck a match for the purpose of igniting the candles. An explosion immediately occurred, the room having, from the time of their departure to his return, become filled with gas from the oil and gasolene with which the parties had saturated the "fire machine" and other articles in the room. He was badly injured and was taken to the hospital. It was there that his conscience smote him and he disclosed all these facts to the officers.

Both women contradicted his testimony and stoutly denied any complicity or connection with him in respect to a plot to burn the building; and it was insisted in their behalf, in the court below and again in this court, that Perry acted in the matter on his own volition and for purposes of revenge for some slight to which, it is claimed, Mrs. Yates had subjected him. The state relied largely for conviction on the testimony of Perry, and, as he was a co-conspirator with the two women, according to his own testimony, conviction could not be had upon his uncorroborated testimony. The court below granted the motion of Mrs. Anderson for a new trial on the ground that the corroborative evidence, as to her, was insufficient.

In the view we take of the case, it is unnecessary to determine whether Perry was sufficiently corroborated to justify the conviction of Mrs. Yates. Whether she be guilty or not depends upon whether she or Perry testified falsely. But, whatever the fact may be, a question we do not determine, it is clear that, for certain errors committed on the trial, she is entitled to a new trial, for her substantial rights were thereby so far invaded that we are unable to say that they were not prejudicial. To these we make a brief reference.

During the course of the trial one Babcock was called as a witness on the part of the state. He was apparently unfriendly and hostile to Mrs. Yates. He testified to his acquaintance with her and related a conversation had with her relative to some goods he had bought of her while she was in business on Hennepin avenue, and which he had moved to his home on Charles street. The question was asked him whether Mrs. Yates at that time, which was about a year prior to the transaction in question, said anything to him about those goods. The question was objected to as irrelevant and immaterial, as referring to a transaction not connected with the matters charged in the indictment. The objection was overruled, to which defendant excepted, whereupon the witness answered: "She said to me: 'Why don't you get everything you have got here insured for $800 or $1,000 and in four or five days after you get the insurance all right set them afire?' I was thunderstruck never so much so in my life. It was the first intimation I had ever had of anything like that from that woman at all, and I said: 'Emma, for God's sake; the idea of burning that property and Mr. Moffet's house here!' I walked out 'of the room and downstairs in disgust." Counsel for defendant promptly moved to strike out the answer as irrelevant and immaterial, but the court denied the motion.

In this the court was clearly in error; the evidence was wholly irrelevant to the matters in issue under the indictment, and highly prejudicial to the defendant. It not only tended to characterize her as an incendiary, willing to burn property for the purpose of procuring the insurance thereon, but reflected upon her general character as a law-abiding citizen, which the state, of course, had no right to impeach at that time. It is insisted on the part of the state, while practically conceding that the ruling of the court was error, that it was without prejudice, because later on during the trial the court of its own motion struck the testimony out. The evidence was of such a character that it may be doubted seriously whether the impression created in the minds of the jury was removed or eliminated by the action of the court in striking it out. Wells v. Moses, 87 Minn. 432, 92 N. W. 334. The poison was injected into the case at the time the testimony was given, and, having received at least the temporary

sanction and approval of the court, it naturally created a strong feeling adverse to defendant.

Again, the importance of the fact which this evidence tended to establish was emphasized in the court's instructions to the jury, and necessarily confirmed whatever impression they might have formed therefrom. When the court came to instruct the jury, it referred to this item of evidence, and said that the witness Babcock had testified that, while Mrs. Yates was living in the Midway district at the home of Babcock, she spoke to him about having certain property insured and then burning it to get the insurance. The court stated to the jury that the evidence had been stricken from the record and should not be taken into consideration in determining the merits of the case, but, coupled therewith, the court further said that striking the evidence from the record did not affect the testimony of the witness Perry who had related to the jury the same subject-matter. It is true that the witness Perry had testified to substantially the same thing as witness Babcock, but it was equally irrelevant and prejudicial, and, though it got into the case without objection, the court should not, in reminding the jury of the fact that it had struck out the testimony of Babcock for the reason of its incompetency, have said to them in effect that the evidence of Perry established the same fact. It is true, there was no exception to the charge of the court respecting the testimony of Perry on this subject, and we refer to it only for the reason that it tends to show that the prejudice arising from the error in refusing to strike out the testimony of Babcock at the time it was given was not wholly removed by the subsequent action of the court.

If this were the only error presented by the record, and the guilt of defendant was beyond doubt, the order denying a new trial would probably be affirmed on the theory that it, standing alone, was not sufficiently prejudicial to her substantial rights. But a consideration of that error, in connection with certain assignments respecting the charge of the court to the jury, leads to the conclusion that defendant was not given such a trial as the constitution and laws of the state guaranty to her. She was entitled to have the question of her guilt or innocence determined by the jury from competent legal evidence, uninfluenced by extraneous irrelevant matters, guided by appropriate

rules of law laid down by impartial instructions. This right we conclude was not afforded her.

The charge of the court was somewhat lengthy, and, in addition to stating the general rules of law applicable to the case, the court reviewed at some length the testimony before the jury, but in such a way as to subject the charge as a whole to the characterization that it was extremely argumentative, as well as objectionable in the respect that particular witnesses sworn by the state were singled out and the jury specially enjoined to consider their testimony in connection with the other evidence, thus giving undue prominence to parts of the evidence in the case. In doing this the court unconsciously limited its special references to particular witnesses to those sworn by the state, and, though it repeatedly admonished the jury of its duty to consider fully and fairly all the evidence before them, it necessarily impressed them with the view that the witnesses specially referred to had given testimony of exceptional and decisive importance. This was error within all the authorities. Blashfield, Instructions, § 109; Harriott v. Holmes, 77 Minn. 245, 79 N. W. 1003; State v. Hoy, 83 Minn. 286, 86 N. W. 98; Goodhue Farmers Warehouse Co. v. Davis, 81 Minn. 210, 83 N. W. 531; 2 Current Law, 470.

The court, also, in its instructions, took up the argument of counsel for defendant, made before the jury, reviewing and refuting in many respects his contentions and theories of the case. The instructions in this respect are clearly objectionable as argumentative, and tended to disclose to the jury the attitude or opinion of the court upon the guilt or innocence of defendant. While the court has the right, under our practice, to review the evidence in a criminal case in its charge to the jury, instructions in this respect should be general, to the end that all the facts may be laid before the jury impartially, and their minds not confused or led to a particular result, either by singling out and emphasizing parts of the testimony, or by laying special stress upon particular contentions or theories.

We had occasion to refer to the subject in the case of Johnson v. Walsh, 83 Minn. 74, 85 N. W. 910. While that was a civil case, we held that the practice of the trial court in its instructions to the jury of attempting to refute arguments of counsel was not to be commended; that the full duty of the court in any case was performed when the

leading facts and contentions of the respective parties were stated to the jury, together with such rules and principles of law as were necessary to guide them in their deliberations. This rule applies with greater force to a criminal prosecution, where the defendant has the constitutional right to have the facts in issue determined by the jury uninfluenced by opinions from the bench. We are not to be understood as saying that the learned trial court intentionally disclosed its view of the facts to the jury in the case at bar, but a reading of the charge as a whole leaves the impression that the jury must have understood that the court was on the state's side of the case. Of course, the court may, in both civil and criminal cases, correct errors or misstatements of fact made by counsel in their arguments to the jury, but an attempted refutation of conclusions or theories which are based by counsel upon testimony properly before the jury is not permissible. The court, when that is its purpose, necessarily assumes the position of an advocate, its instructions are argumentative, and consequently objectionable, and the error is not cured or overcome by the further instruction that the jury are the sole judges of the weight and effect to be given the evidence. Blashfield, Instructions, 49; People v. Lyons, 49 Mich. 78, 13 N. W. 365; Territory v. O'Hare, 1 N. D. 30, 44 N. W. 1003; State v. Dick, 60 N. C. 440, 86 Am. Dec. 439; People v. Chew Sing Wing, 88 Cal. 268, 25 Pac. 1099; People v. Kindleberger, 100 Cal. 367, 34 Pac. 852.

It is unnecessary to consider the other assignments of error. What has been said disposes of the case and results in a reversal of the order denying the appellant a new trial.

Order reversed and new trial granted.