CHICAGO FLEXOTILE FLOOR COMPANY v. CHARLES R. LANE.[1]

March 17, 1933.

Nos. 29,188, 29,189.

[1]Reported in 247 N. W. 517.

*W. C. Preus* and *Daniel Carmichiel,* for appellant.

*Edson S. Gaylord* and *Grimes & Toensing,* for respondent.

OLSEN, JUSTICE.

Defendant appeals from an order denying his motion for a new trial and also from the judgment entered in plaintiff's favor.

The case was tried to the court, and findings of fact and conclusions of law were duly made, upon which judgment was entered. The plaintiff was and is engaged in the business of furnishing the material for and laying what is known as "Flexotile Floors" or floor coverings in buildings. It enters into contracts with owners or occupants of buildings to install such floors at a fixed price per square foot. This floor material was manufactured, or at least its sale and distribution controlled, by the Flexotile Floor Company, a corporation located at Rockford, Illinois, which may be referred to as the Rockford company. This company did not generally engage in installing these floors or taking contracts therefor. It made what is referred to as licenses to other companies to contract for and install these floors in specified territories, including agreement by the licensees to purchase the material from and pay for same to the Rockford company at fixed prices. The Rockford company conducted a nation-wide advertising campaign and in that way got in touch with prospective customers for its product. It then referred such customers to one of its licensed installing com-

424

panies and turned the correspondence and matter of contracting for and installing the floors over to such licensee. The plaintiff was organized and incorporated in January, 1927, and was licensed by the Rockford company to contract for and install flexotile floors in Cook county, Illinois, and elsewhere, as might be mutually agreed upon from time to time. Most of plaintiff's officers and directors were residents of Minneapolis, in this state. Its directors' meetings appear generally to have been held there and its business directed and controlled from there. It opened an office in Chicago for carrying on the work of obtaining contracts and installing floors in Cook county and elsewhere. Defendant was one of its incorporators and stockholders and a vice president and director of the corporation. He was employed as the manager of its Chicago office and business from the time of its organization until his resignation December 31, 1929.

The court made very complete and clear findings of fact. Three causes of action are involved. First, the court found in substance that shortly before he resigned and while acting as manager of plaintiff's Chicago office and business defendant obtained for plaintiff a contract to install flexotile floors for Carroll & Klug, at Portage, Wisconsin; that defendant fraudulently failed to report the making of this contract to plaintiff at Minneapolis, and a few days after his resignation fraudulently caused to be represented to Carroll & Klug that plaintiff was unable to perform the contract and induced them to change the contract so as to be in the name of the Rockford company, which was in fact the name under which defendant was then doing business for himself; that when he resigned defendant removed and took with him from the office and files of plaintiff the contract and all correspondence relating to the Carroll & Klug job; that he thereafter did perform the contract with Carroll & Klug and received a profit therefrom amounting to $1,298.66. The plaintiff was at all times in position to carry out the contract and would have done so if defendant had not concealed the contract and diverted it from plaintiff.

The second cause of action is as to a contract with Stone & Thomas at Wheeling, West Virginia, which the court found was

obtained for plaintiff, concealed, and fraudulently diverted by defendant in substantially the same way. Differences claimed by defendant will be referred to later. On this contract defendant received a profit of $5,612.62.

The third cause of action on which recovery was allowed was for commissions received by defendant from the Rockford company on the price of material purchased by plaintiff from that company, which the court found were secret profits obtained by defendant from the plaintiff's business. The amount as allowed by the amended findings was $7,102.97, from which a deduction of $2,500 was allowed for money advanced by defendant to plaintiff, leaving a balance of $4,602.97.

The court in its memorandum, made a part of its findings and decision, states in reference to the Carroll & Klug contract:

"In failing to approve and turn this contract over to the plaintiff Lane violated his duty and fraudulently and dishonestly obtained the fruits of the contract for himself."

In reference to the Stone & Thomas contract the court says:

"The whole transaction constituted a fraudulent diversion of the business of the plaintiff to the defendant personally, which was an abuse of his duties as agent of the plaintiff."

■ If the facts as found by the court are sustained by the evidence there is not much room for discussion of the law. An officer and agent of a corporation, in charge of business for it, who secretly and fraudulently diverts corporate business within his charge to himself and receives and appropriates the profits thereof, is accountable to the corporation for such profits. He is likewise accountable to the corporation for secret commissions received by him upon goods purchased for the corporation. Tilleny v. Wolverton, 46 Minn. 256, 48 N. W. 908; Smitz v. Leopold, 51 Minn. 455, 53 N. W. 719; Goodhue F. W. Co. v. Davis, 81 Minn. 210, 83 N. W. 531; Snell v. Goodlander, 90 Minn. 533, 97 N. W. 421; Farmers W. Assn. v. Montgomery, 92 Minn. 194, 99 N. W. 776; Schick v. Suttle, 94 Minn. 135, 102 N. W. 217; Kimberly v. Arms, 129 U. S. 512, 9

S. Ct. 355, 32 L. ed. 764; Maas v. Lonstorf (C. C. A.) 194 F. 577.

■ A number of objections are raised by defendant to the findings and conclusions of the trial court.

It is urged as to the two contracts in question that plaintiff had no authority from the Rockford company to take contracts outside of Cook county without the consent and agreement of that company. The facts that the Rockford company, through its advertising, got in touch with Carroll & Klug and Stone & Thomas, and thereupon turned over the correspondence and referred the matter in each case to plaintiff for attention and making of contract, and that plaintiff, by its agents, then negotiated and contracted with these parties, fully answer this objection.

It is urged that the employe of the Chicago office who obtained the contract from Carroll & Klug had no authority to bind the plaintiff without express approval of the contract by defendant or by the Minneapolis office. The evidence tends to show that Matthews, the employe in the Chicago office who obtained this contract, was sent to see Carroll & Klug with authority to contract with them at a fixed price and that no other approval of the contract was necessary. The contract was in all respects acceptable to plaintiff, and if any approval by defendant or the Minneapolis office was necessary it was defendant's duty immediately to approve the contract or submit it to the Minneapolis office for approval. Snell v. Goodlander, 90 Minn. 533, 97 N. W. 421; Kingsley v. Wheeler, 95 Minn. 360, 104 N. W. 543. Defendant cannot now claim that because he violated his duty and secretly and fraudulently diverted the contract to himself he should not be held liable.

The Stone & Thomas contract was entered into by correspondence between them and defendant. Defendant sent them a proposal in the name of plaintiff for the work to be done by plaintiff, which they accepted with a slight change as to the time of performance. This acceptance was received by defendant at plaintiff's Chicago office a day or two before his resignation, but was not answered by him until ten days later. He then wrote Stone & Thomas, enclosing a form of contract running not to plaintiff but to the Rockford

company, in whose name he was in fact doing business for himself personally. In that letter he said:

"In compliance with your communication of December 26th we are herewith enclosing one of our regular forms of contract; although as far as we are concerned it is not necessary.

"Our proposal to you under date of December 18th along with your authorization of December 26th, is sufficient for our use if it meets with your approval. If, however, you prefer the form as enclosed herewith, you will please retain the original and return the duplicate to us, as accepted by you.

"All arrangements have already been made for the work to start early in February so as to insure the completion of the work before March 1st, 1930."

Stone & Thomas did not sign the proposed contract, but assumed that their letter of acceptance of December 26 was sufficient. Defendant made no mention of any change of parties, and they assumed that their contract was with this plaintiff and that the work done in February was being done by plaintiff. Under the circumstances shown, defendant is in no position to urge that no completed contract was entered into before he resigned. Even if there had been no enforceable contract in either of these matters, after the jobs had been referred to and placed in plaintiff's hands by the Rockford company and negotiations had and practically completed with the parties by plaintiff, defendant could not secretly and fraudulently divert further negotiations and himself become interested and take over the jobs without becoming liable to plaintiff. City of Minneapolis v. Canterbury, 122 Minn. 301, 142 N. W. 812, 48 L.R.A. (N.S.) 842, Ann. Cas. 1914D, 804; National P. & T. Co. v. Gilkey, 182 Minn. 21, 45, 233 N. W. 810.

As to the alleged secret commissions received by defendant from the Rockford company on sales of materials by that company to plaintiff, defendant contends that such commissions were received by him with the knowledge and consent of the plaintiff. The trial court in its memorandum has carefully analyzed the evidence on that issue. Whether defendant received such commissions secretly,

without fairly disclosing the same to plaintiff, in other words without plaintiff's knowledge, was, under the evidence, a question of fact for the trial court, and its findings thereon are sustained by the evidence.

Much criticism is contained in defendant's brief of the conduct of plaintiff's attorney and of the court at the trial, which we do' not deem it necessary to discuss. The court was liberal in admitting evidence for both parties. Neither party has any just cause to complain of the conduct of the court, and no prejudicial error is shown. The case was sharply contested, and there were numerous objections, statements, and arguments presented by counsel for each party. In a trial before the court without a jury there is not much danger of prejudice from such conduct, and none is here shown.

Variance between the complaint and the plaintiff's evidence and failure to prove certain allegations of the complaint are urged. We need not go into details. Two examples thereof are sufficient. Plaintiff alleges in its complaint that defendant was employed by it at a salary of $300 per month. The evidence was that he was paid $300 per month for hotel and living expenses, and in addition thereto his actual railway or other fare in traveling. Whether the $300 per month was called salary or designated for living expenses seems unimportant. Again, the complaint alleges that defendant agreed to devote his entire time to plaintiff's business and that he had entire charge of the business of obtaining and making contracts. These allegations are denied by the answer. The evidence showed that defendant did, presumably with the consent of plaintiff, perform some services for the Rockford company and for one other party while in plaintiff's employ, and that while he had charge of plaintiff's office and business at Chicago he was subject to the direction and control of plaintiff's officers and directors at Minneapolis. There was no material variance or failure of proof. Where a plaintiff proves the essential facts necessary to sustain recovery, he is not defeated because he has failed to prove other allegations of his complaint which are not essential to recovery. If there was any

variance, there is no showing that defendant was misled or prejudiced. Outcault v. Wee, 175 Minn. 443, 221 N. W. 682; G. S. 1923 (2 Mason, 1927) § 9281.

During the trial the defendant asked leave to amend his answer and present evidence to the effect that there was a mistake in the Stone & Thomas contract, and, that while the proposal made to and accepted by Stone & Thomas was in the name of this plaintiff, it was intended by defendant to be a proposal by the Rockford company. The court did not abuse its discretion in denying the application and refusing to receive this evidence.

There are a number of errors assigned upon rulings of the court in admitting and excluding evidence. We do not find any errors justifying reversal.

The order and judgment appealed from are affirmed.

