## C. E. FREEMAN v. MORRIS CONSTRUCTION COMPANY AND ANOTHER.[1]

December 27, 1929.

No. 27,291.

*T. J. Mangan* and *O. K. Alger,* for appellant.
*Freeman & Smith,* for respondent.

WILSON, C. J.

The appeal is from an order denying defendant's motion for a new trial.

[1]Reported in 228 N. W. 442.

The complaint alleges that plaintiff is a dealer in building materials at Franklin, Minnesota; that the state highway department let a contract for the construction of certain culverts located on trunk highway No. 14 near the village of Franklin to defendant Morris Construction Company; that defendant surety company became its surety for the payment of lumber and material used therein; that plaintiff furnished at the request of the construction company cement for said work for which it has not paid.

The two defendants joined in the usual affidavits and demand for a change of venue to Stevens county, wherein the construction company has its domicile. They claimed the right to so change the venue under G. S. 1923 (2 Mason, 1927) § 9215. The clerk refused to transfer the files. At the call of the calendar the court denied defendants' motion to strike the case from the calendar and for an order directing the clerk of court of Renville county to transmit and transfer the files to the clerk of court in Stevens county. At the commencement of the trial a similar motion was made and denied.

■ An action on a public contractor's bond against the surety and the contractor jointly may be brought in the county wherein the cause of action arose, and when so brought the venue of such action shall not be changed under § 9215, but only as provided by § 9216. See G. S. 1923 (2 Mason, 1927) § 9217. The purpose of the legislature apparently is to have such litigation tried in the county where the work is done. There may be many creditors. Those who furnish the lumber and material are least inconvenienced by retaining the venue in the county wherein the work is done. Such must have been the intention when it said "where the cause of action arose." It was not the intention to make a change of venue depend upon the place where the creditor makes his contract, where payment is to be made or where the breach thereof occurs. It is better in such a case to have a general rule. We are of the opinion that the legislature intended to and did make an exception to the general rule of § 9215 by saying in § 9217 that when the action is brought against a surety upon a public contractor's bond in the

county or in one of the counties wherein the work is being done the venue thereof cannot be changed. The complaint disclosed that this was such an action. That was sufficient. The attempt to change the venue by the method authorized by § 9215 was ineffectual, and defendant was properly required to go to trial in Renville county.

Involved in plaintiff's claim is a carload of cement which hardened in the warehouse at Franklin and became unfit for use. Much evidence was received relative to other matters which became immaterial before the close of the trial. The principal issue that was submitted to the jury was the ownership of the carload of spoiled cement. If it spoiled after defendant acquired title, it should pay for it; otherwise not. This particular and important issue in the case was a close one under the evidence. It therefore required a substantial, exact submission to the jury, free from unconscious judicial influence.

In the charge to the jury the court in substance told the jury that plaintiff was suing the surety company "as he could not get his pay out of the defendant." The action as to the surety company had been dismissed with plaintiff's consent. Defendant denied liability. There was nothing to indicate that plaintiff "could not get his money out of the defendant" if he established his right thereto. This language may have been prejudicial.

Plaintiff's account books were put in evidence. He admitted that there were some errors in the account with defendant. He claimed only the correct amount. Counsel for defendant in his talk to the jury apparently made disparaging references to such errors. The court said to the jury:

"Your attention was called time and again during the argument of the case that plaintiff had made entries upon these books which were not true. That assertion was absolutely unnecessary and should not have been made."

The record does not show what counsel said, but it would seem that the erroneous entries were untrue. Counsel had the right to comment thereon without having his argument in reference thereto taken from the jury. To wrongly tell the jury that the statement

should not have been made may have prejudiced counsel's standing and his client's cause.

Mr. Freeman went to Morris and solicited this business from the construction company. Thereafter his end of the negotiations was handled largely by a representative of the Northwestern States Portland Cement Company of Mason City, Iowa. Perhaps the carload of cement was shipped in to Franklin at the suggestion of defendant. Defendant's officer, Mr. Siverts, testified that he called up the cement company at Minneapolis and told them defendant was ready to start operations. The shipment seems to have followed. In the charge to the jury the court said:

"You will recall Mr. Siverts' testimony. It stands before you conclusively proven that the carload of cement did not come to Franklin through and on the motion, in the first instance, of Mr. Freeman. That is conclusive. He took no initiative to get the carload of cement there.

"He tells you that the first he knew about the carload being in transit was when he received the invoice and the bill of lading that had been sent, and that by the time he received them the carload appeared. The first conversation that was had between the construction company, or any of its officers and Mr. Freeman was sometime in the latter part of October, 1926. From that time and until long after and into the year 1927, those two parties never had any conversation between themselves, man to man, as the court recalls the evidence.

"The construction company had upon the job a man who has given testimony here by the name of Ballinger, and so there will be no mistake about what he testified to; the court has had the testimony upon the subject of when there was a conversation about it transcribed. He was asked this question: Question: 'Prior to the time that the carload of cement arrived at Franklin did you have any conversation with Mr. Freeman?' Answer: 'Yes.' Question: 'Will you tell the jury what that conversation was and about how long before this car arrived, if you can remember?' Answer: 'I arrived in Franklin about November 8th. Having had orders from

my boss to find out the price of cement, I went around to the various yards at Franklin, of which there is two. The first was the Hauser Lumber Company, and then I went to Mr. Freeman and asked Mr. Freeman what price he would give the Morris Construction Company. He said he wanted 10 cents over what he would have to pay f. o. b. the warehouse.' "

The practice of singling out and giving undue prominence and emphasis to particular items of evidence or the testimony of particular witnesses is not to be encouraged. In doing so it is difficult to avoid appearing to stress some claims over others. One might easily construe the above charge as going to the support of Mr. Freeman. It was for the jury to remember all the evidence, but if it was conclusively established that the carload of cement did not come through and on the motion in the first instance of Mr. Freeman, it did not necessarily follow that defendant's contention was not true. It would seem that the jury might have gained an erroneous impression from such language in this respect. The charge appears to be argumentative. It was quite an unusual practice for a court to have a transcript of a part of the testimony of a single witness made and then read it to the jury. Why the particular witness? From the standpoint of defendant the witness Ballinger was a minor, temporary employe. He was not an officer in the company. Why he was selected as a headliner does not appear. Had the defendant chosen to have the testimony of a witness transcribed and read, it would have probably chosen the testimony of some other witness. On the contrary plaintiff, Mr. Freeman, was his own best witness. Such selection by the court necessarily impressed the jury with the view that such witness so mentioned had given testimony of exceptional and decisive importance. The jury may have thought that Ballinger's testimony was read because it seemed consistent with Mr. Freeman's version.

Under the authorities we believe the charge is such as to be erroneous and prejudicial. Harriott v. Holmes, 77 Minn. 245, 79 N. W. 1003; State v. Yates, 99 Minn. 461, 109 N. W. 1070; Taubert v. Taubert, 103 Minn. 247, 114 N. W. 763; Kincaid v. Jungkunz, 109

Minn. 400, 123 N. W. 1082; State v. Jones, 126 Minn. 45, 147 N. W. 822; State v. Dallas, 145 Minn. 92, 176 N. W. 491; 6 Dunnell, Minn. Dig. (2 ed.) § 9781.

The order denying the motion for a new trial is reversed.